IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 22, 2003 Session

## JOHN C. WELLS, III v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 92-C-1366     Cheryl Blackburn, Judge**

---

**No. M2002-01303-CCA-R3-PC - Filed July 23, 2003**

---

The petitioner was originally convicted by a Davidson County jury on nine counts of aggravated sexual battery and received an effective ninety-year sentence. He now appeals the denial of post-conviction relief, contending: (1) the post-conviction judge, who was a Deputy District Attorney General at the time of the original prosecution, should have recused herself; (2) he received ineffective assistance of trial and appellate counsel; (3) numerous errors of constitutional dimension occurred at his original trial and on direct appeal; and (4) cumulative errors require that he be granted relief. In spite of our concerns regarding the recusal issue, we are unable to discern any material distinctions with prior cases which have affirmed the failure to recuse. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Monte D. Watkins and Bruce Poag, Nashville, Tennessee, for the appellant, John C. Wells, III.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

After the petitioner was convicted on nine counts of aggravated sexual battery and sentenced to an effective term of ninety years in the Department of Correction, he filed a direct appeal to this court. This court affirmed all of the convictions and sentences. *See* State v. John Claude Wells, III, No. 01C01-9505-CR-00146, 1997 Tenn. Crim. App. LEXIS 533 (Tenn. Crim. App. June 6, 1997, at Nashville), *perm. to app. denied* (Tenn. 1998). Thereafter, the petitioner sought post-conviction relief which was denied by the post-conviction court. This appeal ensued.

A portion of the underlying facts are garnered from our opinion in the direct appeal:

The defendant moved to Nashville in 1987. He subsequently leased an apartment in the Turtle Creek apartment complex. Eventually, he leased a home located on Tobylynn Court in Nashville. In December of 1991, the defendant moved to Austin, Texas.

A young victim, J.T.K., decided to earn spending money during the summer of 1989. He went from apartment to apartment in the Turtle Creek complex offering to remove trash bags from a person's apartment to a garbage container for fifty cents per bag. The defendant's apartment was one of the apartments approached by J.T.K. The defendant agreed to use the minor's services. The minor testified the defendant told him he did not have any trash, but he would give him $5.00 to wash his dishes. The defendant testified he employed the minor to remove his trash. A close friendship developed between J.T.K. and the defendant.

J.T.K. began spending weekends at the defendant's apartment. He introduced other young boys to the defendant. Two other victims, D.D.N. and R.A.V., were two of the young boys J.T.K. introduced to the defendant. These two victims also began spending weekends at the defendant's apartment with the other young boys the defendant had met.

The defendant provided video games, board games, and rented movies for the boys on the weekends. He took the boys to a movie theater on occasion. In addition, he took several of the boys to Opryland, Kings Island in Ohio, Gatlinburg, and Mammoth Cave in Kentucky. He also took the boys to the zoo, a skateboard park, and other parks in Nashville. The defendant stated he took some of the boys fishing at Percy Priest Park near Nashville. He also took the boys on camping trips. The defendant took some of the boys to New Orleans for the Sugar Bowl. He also took the boys to fast food restaurants. The defendant paid for all of the expenses incurred for the food and the trips.

J.T.K. took Taekwondo lessons. The defendant paid for these lessons. He loaned money to R.A.V.'s mother. He gave her a motor vehicle. He also paid six months rent in advance when she moved to a duplex. He gave the boys nice presents on Christmas and their birthdays.

Most of the boys were from families without fathers in the household. Some of these boys had stepfathers whom they did not like. The defendant was a father-figure to these young boys.

On April 22, 1991, D.D.N. told a teacher he had been sexually abused by the defendant. The police were called. D.D.N. gave the police a statement implicating the defendant. An investigation ensued. Detective Bruce Amos of the Metropolitan Police Department interviewed the defendant on May 17, 1991. Between July 8,

1991 and November 22, 1991, he interviewed the young boys who spent time at the defendant's apartment. The defendant made entries in a desk calendar of the dates of the interviews. He admitted he left Nashville shortly after Thanksgiving in 1991.

When the defendant arrived in Texas, he took steps to change his identity from John Claude Wells, III, to Duane Wells. He gave his new employer and others a false social security number. The defendant was subsequently sent to Philadelphia, Pennsylvania to install wireless cable television units. While in Philadelphia, he was stopped for a traffic offense. He gave the officer his Tennessee driver's license which contained his correct name. The officer apparently ran an NCIC check. The check revealed he was wanted in Tennessee for aggravated sexual battery. He was subsequently extradited to Tennessee. He remained in jail until the trial.

John Claude Wells, III, 1997 Tenn. Crim. App. LEXIS 533, at **3-6 (footnote omitted).

The proof established that each of the three male victims was under thirteen years of age. Six of the convictions involved the same victim, and all incidents occurred prior to April 22, 1991. Two of the convictions involved a separate victim and occurred prior to September 17, 1991. The final conviction involved a separate victim and occurred prior to November 22, 1991. *See id.,* at **6-9.

## POST-CONVICTION HEARING

The petitioner testified at his post-conviction hearing that he believed his trial and appellate counsel were deficient in several respects. The petitioner stated his trial counsel was unable to effectively cross-examine the victims because trial counsel did not subpoena necessary school and therapy records of all of the victims. The petitioner further claimed that, due to the nature of the case, trial counsel should have secured expert assistance to establish that the child victims had been coerced and were untruthful. He further contended trial counsel was ineffective in failing to move to strike the testimony of one of the victims when the prosecution conceded that the pretrial taped interview of the child had been lost.

The petitioner further testified that the state impeached him at trial with an alleged fraudulent bankruptcy petition which he had filed. The petitioner contended trial counsel should have subpoenaed his bankruptcy attorney who would have testified that this was a clerical error which was not the responsibility of the petitioner. The petitioner further testified that trial counsel was deficient in failing to subpoena a DHS investigator and a Home Ties worker, both of whom were involved in the initial investigation. Finally, the petitioner testified that, in his view, appellate counsel was deficient in failing to raise the issue of the bankruptcy petition on appeal and in not allowing the petitioner to be an integral part of the appellate process.

The petitioner presented the testimony of Dr. William Bernet, a child psychiatrist. The essence of Dr. Bernet's testimony was that alleged victims of child sexual abuse are sometimes untruthful due to improper influence and/or other causes. Dr. Bernet had reviewed various records

involving this case and opined that some of the victims' allegations were consistent with truth, whereas others were not.

Trial counsel, an assistant public defender at the time of trial, testified that he and the public defender's staff had done an extensive investigation in the case. He conferred with the petitioner on numerous occasions, and the petitioner was aware of the nature of the defense to be presented. Trial counsel secured numerous records prior to trial. Trial counsel did not seek the appointment of an expert witness because counsel did not believe the request would be granted. Furthermore, trial counsel believed expert testimony addressing the credibility of the victims would be inadmissible at trial. As to the state's loss of the taped interview of one of the victims, trial counsel had a written transcript of the interview. In short, trial counsel was unaware of anything else he could have done to provide a better defense.

## POST-CONVICTION COURT'S FINDINGS

The post-conviction court filed extensive findings of fact and conclusions of law. Among those findings and conclusions were the following:

1. trial counsel conducted a proper pretrial investigation of the case;

2. trial counsel was not deficient in failing to seek expert testimony or assistance in developing a defense;

3. trial counsel was not deficient in failing to take further action with regard to the lost taped interview of one of the victims;

4. the issues involving the bankruptcy petition were resolved on appeal; and

5. appellate counsel was not deficient in researching and presenting issues for the direct appeal.

The post-conviction court dismissed the petition.

## RECUSAL OF POST-CONVICTION JUDGE

### A. Procedural Background

The petitioner moved the post-conviction judge to recuse herself because she was a Deputy District Attorney General during the petitioner's original prosecution. The post-conviction judge filed an order denying the motion, although the order stated that the "petitioner has likewise declined to sign a waiver" pursuant to the Code of Judicial Conduct, Canon 3(F), Tennessee Supreme Court

Rule 10, "that would allow this Court to hear the case."[1]  The petitioner sought permission from the post-conviction court for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure; the post-conviction court denied the request.  The petitioner then sought an extraordinary appeal to this court pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure; this court denied the application.

After oral argument in the case now before us, we remanded to the post-conviction court for additional findings on this issue.  The post-conviction judge made additional findings, and those findings have been properly certified to this court.  Upon remand and after a hearing, the post-conviction judge made findings which are undisputed.  We summarize the findings:

1. At the time of the petitioner's original trial, the judge-then-prosecutor was one of two Deputy District Attorneys General in an office having over forty attorneys;

2. Although she had supervisory responsibilities, they did not include child sexual abuse cases;

3. She did not supervise the petitioner's case nor the Assistant District Attorney General who prosecuted the petitioner's case; and

4. She had no contact with the petitioner's case "either directly or indirectly" and was unaware of the case until the filing of the post-conviction petition.

## B.  Code of Judicial Conduct

Recusal of a judge is required if the judge served as a lawyer in the matter in controversy or a lawyer with whom the judge practiced served in the matter in controversy.  Tenn. Sup. Ct. R.10, Code of Judicial Conduct, Canon 3(E)(1)(b).  However, the commentary to that section reflects that lawyers in a governmental agency are not considered in practice with other lawyers employed by that agency within the meaning of this mandate.  *Id.*  Nevertheless, the commentary makes clear that recusal may still be required if "the judge's impartiality might reasonably be questioned because of such association."  *Id.*  At issue in this appeal is whether the post-conviction judge should have recused herself under the general provision of section (E)(1) which requires disqualification when the "judge's impartiality might reasonably be questioned." [2]

## C.  Judicial Ethics Opinion

The Judicial Ethics Committee of this state opined that a judge is disqualified "from presiding over any case that was pending in the district during the time he [or she] was an assistant

---

[1]This canon contemplates a written waiver when the judge is, in fact, disqualified from hearing the matter, and the lawyers "jointly propose" it independently of the judge.  Canon 3(F) Commentary.  It is apparent the post-conviction court found no basis for disqualification and, thus, no need for a waiver.

[2]This is an issue that frequently arises since former prosecutors often become trial judges.

district attorney general." Judicial Ethics Committee, Formal Opinion No. 88-2 (1988). The Judicial Ethics Committee concluded the "judge's impartiality might reasonably be questioned" under such circumstances. *Id.*[3] Thus, recusal would clearly be required under this opinion. Judicial ethics opinions constitute a "body of principles and objectives upon which judges can rely for guidance." *See* Tenn. Sup. Ct. R. 9 § 26.6(h). However, ethics opinions do not have the force of law. *See* State v. Jones, 726 S.W.2d 515, 519 (Tenn. 1987) (noting ethics opinions from the Board of Professional Responsibility are not binding upon the courts).

## D. Case Law

Subsequent to the judicial ethics opinion, this court determined that disqualification was not required where the post-conviction judge was "one of nearly seventy attorneys" employed by the district attorney general's office during the prosecution of the petitioner; he never assisted in the prosecution of the case; and he knew nothing about the facts. Owens v. State, 13 S.W.3d 742, 757 (Tenn. Crim. App. 1999). This published opinion supersedes the previously issued ethics opinion. *See* Tenn. Sup. Ct. R. 4(G) (specifying that published judicial opinions are controlling authority).

Similarly, this court held a judge was not disqualified from hearing a post-conviction relief petition when the judge "had no involvement, whether investigatory or supervisory, with the petitioner's criminal case while she was in the district attorney's office," and the judge "departed from the district attorney's office over one year prior to the indictment's return." Jessie C. Minor v. State of Tennessee, No. M2001-00545-CCA-R10-PC, 2001 Tenn. Crim. App. LEXIS 932, at **31-33 (Tenn. Crim. App. Dec. 5, 2001, at Nashville). This court also held that a judge may preside over a revocation hearing even though the judge was an assistant district attorney general at the time of the defendant's conviction, and the judge-then-prosecutor had no involvement in the case when the judge was an assistant district attorney general. State v. Margo Ellis, No. W2000-02242-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 579, at **4-5 (Tenn. Crim. App. July 19, 2001, at Jackson). In addition, this court held a judge-then-prosecutor was not disqualified from hearing a post-conviction relief petition where, as an assistant district attorney general, he was merely present in the courtroom during one pre-trial hearing due to the absence of the assigned prosecutor and knew nothing about the petitioner's cases. Victor James Cazes v. State, No. W1998-00386-CCA-R3-PC, 1999 Tenn. Crim. App. LEXIS 1194, at **52-53 (Tenn. Crim. App. December 9, 1999, at Jackson).

## E. Standard of Review

A trial judge should recuse himself or herself whenever the judge "has any doubt as to his [or her] ability to preside impartially in a criminal case or *whenever his [or her] impartiality can reasonably be questioned*." Pannell v. State, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001) (emphasis added). Although the first proviso is a subjective test, the latter emphasized proviso

---

[3]The Code of Judicial Conduct was substantially altered effective January 27, 1997; however, the mandate for recusal when the "judge's impartiality might reasonably be questioned" remained unaltered. *See* Tenn. Sup. Ct. R. 10, Code of Judicial Conduct, Canon 3E(1).

requires an objective standard. Alley v. State, 882 S.W.2d 810, 820-21 (Tenn. Crim. App. 1994). "Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Id*. at 820. The trial judge retains discretion over his or her recusal. State v. Smith, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995). Unless the evidence in the record indicates that the trial judge clearly abused his or her discretion by not disqualifying himself or herself, this court will not interfere with the decision. State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).

The issue in the case under submission is not whether the post-conviction judge could be, or was, fair and impartial; there is nothing to indicate unfairness or partiality. The issue is whether there is an objective, reasonable basis for questioning the judge's impartiality. Alley, 882 S.W.2d at 820.

## F. Analysis

In the Owens, Ellis, and Cazes cases cited above, there was no indication the judge-then-prosecutor had any supervisory responsibilities. In Minor, the judge-then-prosecutor had supervisory responsibilities although not over the particular case or prosecutor; however, the judge-then-prosecutor was no longer in the district attorney's office when the relevant indictment was returned. Thus, these cases are distinguishable from this case, but only to this extent.

Neither this court nor our state supreme court has addressed the issue of whether recusal is required where the judge-then-prosecutor had general supervisory responsibilities or supervisory responsibilities over the prosecutor or case at issue. "[I]f a judge-previously-prosecutor supervised or even recorded his or her name on documents of record in a case now before the court, the judge may be required to disqualify [himself or herself], even if there is no showing that the judge was involved or had knowledge of the case while prosecutor." Jeffrey M. Shaman, et al., *Judicial Conduct and Ethics* § 4.16, p. 142 (3d ed. 2000). We further recognize that inconvenience to the court or docket concerns play no role in the determination of whether a judge's impartiality can reasonably be questioned.

However, the undisputed record in this case reflects the judge-then-prosecutor had no supervisory responsibilities over the case or prosecutor, nor any involvement in the case "either directly or indirectly." Had we examined this issue without the benefit of our prior case holdings, we would be inclined to conclude that recusal would be required under an objective standard for a judge-then-prosecutor who was a Deputy District Attorney General with general supervisory responsibilities when the case was tried, even though those responsibilities did not extend to the case at issue. Nevertheless, in spite of our concerns, we are unable to discern a material distinction in this case, as compared to our other cases, that is sufficient to justify a departure from those holdings. Although we invite further appellate review of this issue, we conclude, in light of our prior cases, the post-conviction judge did not err in refusing to recuse herself.

# INEFFECTIVE ASSISTANCE OF COUNSEL

## A. Standard of Review

The petitioner contends he was deprived of the effective assistance of both trial and appellate counsel. The petitioner, in this post-conviction proceeding, bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The factual findings entered by the post-conviction court are conclusive unless the petitioner establishes that the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The petitioner is not entitled to the benefit of hindsight; the petitioner may not second-guess a reasonably based trial strategy; and the petitioner may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

As to the petitioner's claim that his appellate counsel was ineffective, we recognize that it is counsel's responsibility to determine the issues to present on appeal. State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (citing State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). This responsibility addresses itself to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). There is no constitutional requirement that every conceivable issue be raised on appeal. Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issues to raise is a tactical or strategic choice. *Id.*

## B. Analysis

The petitioner contends trial counsel did not secure the educational and therapy records of two of the victims. The post-conviction court found trial counsel's pretrial preparation was not deficient. The evidence does not preponderate against this finding. Further, the petitioner has failed to show that further investigation into the records of the alleged victims would have affected the results of the trial.

The petitioner contends trial counsel failed to secure expert assistance to develop a defense. Initially, we note that at the time of the petitioner's trial in November 1994, Tennessee had not recognized an indigent defendant's right to the appointment of an expert in non-capital cases. *See* State v. Barnett, 909 S.W.2d 423, 425 (Tenn. 1995). It was not until Barnett that this right was recognized. *Id.* at 424. We further observe that it is highly doubtful that expert testimony relating

to the credibility of the victims would have been admissible. *See* State v. Coley, 32 S.W.3d 831, 837 (Tenn. 2000) (holding that the subject of the reliability of eyewitness identification is not the proper subject of expert testimony); State v. Ballard, 855 S.W.2d 557, 561 (Tenn. 1993) (holding that expert testimony concerning symptoms of post-traumatic stress syndrome exhibited by victims of child abuse invades the province of the jury in making its own determination of credibility). The post-conviction court found trial counsel was not ineffective by failing to request expert assistance. The evidence does not preponderate against this finding. Further, the petitioner has not shown that expert assistance would have affected the results of the trial.

The petitioner next contends trial counsel was ineffective in failing to request the trial court strike the testimony of one of the victims when the tape of the victim's pretrial interview had been lost. Trial counsel testified he had a written transcript of his statement. The petitioner has not established deficiency nor prejudice.

The petitioner contends trial counsel should have subpoenaed the petitioner's bankruptcy attorney to rebut the state's implication that the petitioner had filed a fraudulent bankruptcy petition. The petitioner contends the bankruptcy attorney would have testified that this was a clerical error. However, the bankruptcy attorney did not testify at the post-conviction hearing. *See* Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that when a petitioner contends trial counsel failed to present a witness, the witness should be presented by the petitioner at the post-conviction hearing). Further, the petitioner has failed to show that such testimony would have affected the results of the trial in which the victims' credibility was the primary issue.

The petitioner contends trial counsel was ineffective in failing to interview or subpoena a DHS investigator and an employee of Home Ties who were involved in the initial investigation. Again, the petitioner failed to secure the testimony of these two potential witnesses at the post-conviction hearing. We are unable to speculate as to the significance of these two potential witnesses. *See id.*

Finally, the petitioner contends appellate counsel was deficient in failing to raise as an issue on appeal the matter concerning the alleged fraudulent bankruptcy petition and was further deficient in not allowing the petitioner to play a more integral role in the appeal. Whether or not to raise the bankruptcy issue on appeal was within the sound discretion of appellate counsel. *See* Porterfield, 897 S.W.2d at 678. In addition, the petitioner has failed to establish that any further consultation with the petitioner would have led to a different result on appeal.

All issues relating to ineffective assistance of counsel are without merit.

## PREVIOUSLY DETERMINED/WAIVED ISSUES

The petitioner contends the post-conviction court erred in not granting him relief based upon the following allegations: (1) the jury instruction defining "reasonable doubt" given at his trial was unconstitutional; (2) the Criminal Injuries Compensation Act deprived the petitioner of a fair trial because alleged victims must cooperate with the state in order to secure compensation; (3) the trial judge in his original trial was biased; (4) the appellate court in his direct appeal was biased; (5) the

indictment was void for failure to allege the *mens rea* for the offenses; (6) the appellate court lacked jurisdiction to declare that the omission of the *mens rea* in the indictment did not deprive the petitioner of his constitutional rights; (7) the trial court erred in effectively amending the indictment when it set forth in the jury instructions the proper *mens rea* for the offenses; and (8) suggestive questioning of the alleged victims deprived him of his constitutional rights. We are unable to agree with the petitioner's contentions.

A ground for post-conviction relief is waived if it was not presented to the appellate court when the ground could have been presented. Tenn. Code Ann. § 40-30-206(g). Further, a ground for post-conviction relief is previously determined if the appellate court has ruled upon its merits after a full and fair hearing. *Id.* § 40-30-206(h). If an issue has been waived or previously determined, it is not the proper subject of post-conviction relief. *Id.* § 40-30-206(f).

The reasonable doubt jury instruction, the effect of the Criminal Injuries Compensation Act, the alleged bias of the trial judge, and suggestive questioning were not raised on direct appeal and are waived. We further conclude that had they been raised, the petitioner would not have prevailed on these issues. The failure to allege the *mens rea* in the indictment was specifically considered by the appellate court in the direct appeal and found to be without merit. John Claude Wells, III, 1997 Tenn. Crim. App. LEXIS 533, at **12-13. Thus, the three issues relating thereto have been previously determined. As to the petitioner's contention that the Court of Criminal Appeals was biased in the direct appeal, no request for recusal was made and this issue was not presented in the application for permission to appeal to the Tennessee Supreme Court. Accordingly, this issue is waived.

## CUMULATIVE ERRORS

Finally, the petitioner contends the cumulative effect of the various errors alleged in his petition justify relief. We discern no errors; thus, this issue lacks merit.

Based upon our review, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE