IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 12, 2010 Session

## IN RE: CONSERVATORSHIP OF GOLDIE CHILDS

**Appeal from the Circuit Court for Davidson County**
**No. 07P-1096      David Randall Kennedy, Judge**

**No. M2008-02481-COA-R3-CV - Filed January 5, 2011**

Two of the daughters of an eighty-two year old woman filed a petition to be named as their mother's Conservator. The trial court found that the mother did indeed need a Conservator, but because of family disagreements it appointed a third party to perform that role. Seven months later, the same daughters filed a petition to remove the incumbent Conservator and to be named as Co-Conservators to replace her. The mother died after proceedings on the second petition began, but before the trial court could rule on its merits. The Conservator subsequently moved the court for payment of her fees. The court found that some of those fees were incurred as a direct result of the uncooperative acts of the two daughters. Since the decedent's estate was indigent, the court entered two money judgments for costs against the daughters. We reverse the judgment that was assessed against one of the daughters for failing to return her mother to the nursing home in a timely way, because although her actions led to additional costs, no legal basis for the judgment appears in the record. We vacate the judgment based on the unsuccessful petition to remove the conservator and we remand the case for further proceedings, because although Tenn. Code Ann. § 34-1-114 does allow an assessment of costs against such petitioners, it is unclear how much of the court's judgment falls within the parameters of that statute.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part, Vacated in Part, and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Sheryl D. Guinn, Nashville, Tennessee, for the appellants, Hazel Childs, Oreva Childs.

Jeanan Mills Stuart, Nashville, Tennessee, Pro Se.

## OPINION

## I. BACKGROUND

### 1. The Appointment of a Conservator

On July 13, 2007, Hazel and Oreva Childs filed a petition in the probate division of the Davidson County Circuit Court, asking the court to name them as co-Conservators for their widowed mother, eighty-two year old Goldie Childs. At the time, Goldie Childs was living in her own home with her son Edward, who had shared the home for many years. The petitioners asserted that their mother had been diagnosed with dementia, that she was no longer capable of managing her own affairs, and that they had already been acting as their mother's primary caretakers. Attached to the petition was a report from her treating physician, Dr. Viola Chen, which indicated that Goldie Childs was in need of a Conservator to act on her behalf.

The petition also listed the names and addresses of the eight children of Goldie Childs, and contained allegations of strong disagreements between some of them as to the best way to take care of their mother, especially in regard to her medical care.[1] It appears that Evelyn Childs and Charles Childs felt that their mother should not take the medication that Dr. Chen had prescribed to help her with her dementia, because of the serious adverse side effects it allegedly caused.[2] According to the petition, Dr. Chen agreed to a trial period during which Ms. Childs would not take the medicine, and that her mental condition deteriorated rapidly as a result. The petition also alleges that shortly after Ms. Childs was taken off her medication, Evelyn obtained a power of attorney from her, and moved her to "an undisclosed location."[3]

---

[1]Because most of the family members involved in this case share the Childs surname, once we have identified them by their full names, we will refer to the children by their first names only to avoid redundancy, and we will refer to Goldie Childs as "Ms. Childs" or as "the ward"

[2]According to the petition of Hazel and Oreva Childs, on one occasion, "Hazel Childs attempted to have her mother take some medication, but Edward Childs knocked it out of Hazel Childs' hands, telling Goldie Childs that Hazel was trying to poison her."

[3]The petitioners alleged that Charles would come to Ms. Childs' home in the afternoon or early evening, take her away, and then bring her back to her home at 9:00 or 10:00 at night. The Guardian ad Litem's report suggests that the "undisclosed location" was probably Evelyn's home.

The trial court appointed Wendell Dawson as Guardian ad Litem for Ms. Childs.[4] On August 6, 2007, Mr. Dawson filed a report with the trial court, which contained a detailed account of his meeting with Ms. Childs and of his meetings or telephone conversations with seven of her children. Mr. Dawson stated that he first spoke to Hazel and Oreva by phone, and that he got the impression from them that Evelyn, assisted by her brother Charles, was not interested in her mother's well-being.

Mr. Dawson subsequently met Evelyn and Charles at Evelyn's home, and was surprised to find that Evelyn's "demeanor and disposition was completely opposite the picture that had been painted by her sisters." He reported, among other things, that "she was very pleasant and informative and seemed loving toward their mother." His later interviews with Charles, with Edward, and with Patricia Childs indicated that Evelyn had always been kind and good to her mother, and that she had provided everyone in the family with financial assistance, including Hazel and Oreva. Edward and Patricia both stated that they did not believe Hazel and Oreva should be named as Conservators, and that in their opinion Evelyn was the better choice.

At the request of Mr. Dawson, his interview with Ms. Childs was conducted outside the presence of Evelyn and Charles, in the living room of Evelyn's home. While he found Ms. Childs to be pleasant and good-natured, he observed that she did not know her own age or address, did not recognize the name of Dr. Chen, and was unable to identify her children within five or ten minutes after they left the room. The Guardian ad Litem concluded that Ms. Childs was "very much in need of a Conservator to handle her affairs," and he observed that "Evelyn Childs appears best suited for the role, at least on an interim basis," but he suggested that if Evelyn was unwilling to accept such an appointment, a third party should be appointed as Conservator. *See* Tenn. Code Ann. § 34-3-103 (setting out the priority of persons to be considered for appointment as Conservator, "subject to the court's determination of what is in the best interests of the disabled persons").

The trial court conducted a hearing on August 8, 2007, during which it considered the petition and the report of the Guardian ad Litem and heard the statements of counsel and of the Guardian ad Litem as well as the testimony of witnesses. In an order filed on August 27, 2007, the court announced that it found Ms. Childs to be incapable of managing her estate or caring for herself. The court also noted that there was "family strife," and decided not appoint any family member as Conservator. Instead, the court named Jeanan Mills Stuart, the Public Guardian for Davidson County, as "the Conservator of the estate and of the person of Goldie Childs."

---

[4]The appellate record does not contain a copy of the order appointing the Guardian ad Litem.

The court also announced that Ms. Childs could continue to reside at her home, and that "[n]one of the family members shall swear, fight or engage in otherwise upsetting behavior in the presence of Goldie Childs." The power of attorney executed in favor of Evelyn Childs was revoked, and she was ordered to provide an accounting to the Conservator of all funds which she had spent. The Conservator was ordered to file a property management plan within sixty days. A status conference was scheduled for October 3, 2007.

## 2. A Problem with Visitation

The court heard from the Conservator and the attorneys for the parties at the scheduled status conference and found it to be in the best interest of Ms. Childs that she be admitted to Bordeaux Long Term Care. A status review was set for December 6, 2007. By the time of the status review, Ms. Childs was living at Bordeaux Long Term Care. The review dealt in large part with the need to fashion an appropriate visitation schedule for her children. Presumably for the purposes of spreading visitation out and reducing the possibility of an eruption of family tensions that might be upsetting for Ms. Childs to witness, the court decreed a weekly schedule of visitation for all family members to follow, which among other things prevented Hazel or Oreva's visits to their mother from overlapping with Evelyn's visits.

The most relevant part of the schedule for the purposes of this appeal, however, involves the Christmas holidays. Although there is no transcript of the status review hearing, the Conservator does not dispute the account of the judge's ruling from the bench that was asserted by Hazel and Oreva. The court decided to divide Christmas visitation with Ms. Childs equally between her children, and declared that Evelyn could pick up Ms. Childs on December 21 and keep her in her home until Christmas Day. On Christmas, Evelyn was to deliver Ms. Childs to Oreva's residence where she was to stay until December 29, when Oreva was to return her to Bordeaux Long Term Care.

After the hearing, but before an order was issued, the Conservator learned that Ms. Childs would have to be returned to Bordeaux Long Term Care on December 28 or she would lose her place there, as well as her Medicaid eligibility for care at that facility. The trial court's order, filed on December 20, 2007, therefore recited that "Oreva Childs shall return Goldie Childs to Bordeaux Long Term Care Friday, December 28, 2007 at 4:00 p.m." Since Judge Kennedy was out of town on December 20, Judge Kurtz signed the order by interchange.

It is unclear exactly when Oreva Childs received a copy of the trial court's order of December 20. In any event, she immediately became suspicious because the date she was ordered to return her mother differed from the date that she remembered the trial court

announced from the bench, and the order was signed by a different judge. She did not return Ms. Child to the facility by the ordered time, thereby forcing the Conservator to expend time and effort to protect the rights of her ward. Over the course of seven hours, Ms. Stuart made numerous phone calls to the homes of Oreva and Hazel to request the return of her ward, called the police to find Ms. Childs, traveled to night court to obtain a warrant for false imprisonment, had the warrant served on Oreva, picked up Ms. Childs, and returned her to Bordeaux Long Term Care.

### 3. Life Insurance

The Conservator's inventory and a property management plan, which was filed on October 26, 2007, showed that Ms. Childs had very little in the way of assets and income. The only assets listed were $1,135.26 in money on deposit, and personal property worth $100. Ms. Childs' monthly income from Social Security and a Metro pension totaled $895.47, both of which the Conservator assigned to Bordeaux Long Term Care. The Conservator also reported that she had applied for Medicaid on Ms. Childs' behalf, with the Medicaid payments to supplement the cost of care at Bordeaux. The Conservator noted the existence of a $10,000 life insurance policy that Ms. Childs had received as a benefit from her job at Metro. The Conservator stated that the policy had no surrender value, and was to be used for Ms. Childs' burial expenses.

The Conservator's inventory apparently overlooked some life insurance, for on January 11, 2008, she filed a motion to liquidate five American General Life Insurance Company policies owned by Ms. Childs, with a total cash surrender value of $4,067. The Conservator stated that Ms. Childs had received Medicaid approval, conditional upon the liquidation of all assets greater than the allowed amount of $2,000. The Conservator also noted that Evelyn had purchased a burial plot for Ms. Childs, and she accordingly asked the trial court to approve the liquidation of the five policies, with the proceeds to be applied to the purchase of funeral and burial arrangements for Ms. Childs. After a hearing, the trial court granted the Conservator's motion.

The next significant pleading in the record was a petition filed by Hazel and Oreva on March 19, 2008, to have the court remove Jeanan Mills Stuart as the Conservator for their mother, and to appoint Hazel and Oreva in her stead as co-Conservators. The petitioners asserted that the family had overcome the strife that had led to the appointment of Ms. Stuart, and that all of Ms. Childs' children agreed that they should be appointed as co-Conservators. They attached to their petition affidavits to that effect, signed by each of the children. All the affidavits were notarized by Tameka Childs, Ms. Childs' granddaughter.

The petitioners also asked the court to waive the posting of the bond that is normally required, because the value of Ms. Childs' property did not exceed the sum of $10,000. *See* Tenn. Code Ann. § 34-1-105(b). The court conducted a hearing on April 3, 2008, but did not rule on the merits of the petition, because the Conservator had not yet received the benefit of the full amount of time permitted by law to file a responsive pleading "or otherwise put the matter in controversy ripe for a hearing on the merits." The court also noted that Evelyn was not present at the hearing and that there was no proof of service upon her. The court specifically ordered the petitioners to "bear all costs, including the necessary fees and expenses of the Conservator, relating to this petition, in the event that the co-petitioners pursue this petition and fail."

On May 9, 2008, the Conservator filed a motion to change the beneficiary of Ms. Childs' $10,000 Life Insurance Policy. She asserted that the policy designated Oreva as the beneficiary to provide funds for the funeral and burial of Ms. Childs, but that since a pre-need funeral policy had already been purchased from the proceeds obtained by the liquidation of the life insurance policies held by American General Life Insurance Company, and since Evelyn had purchased a burial plot for Ms. Childs, the policy was no longer needed for that purpose. The Conservator accordingly asked the court to name the estate of Ms. Childs as the beneficiary of the policy. Four days later, before the court could hear the Conservator's motion, Ms. Childs died.

After Ms. Child's death, Oreva collected the $10,000 death benefit from her mother's life insurance policy. She used $5,159.43 from the proceeds to pay for additions to her mother's funeral and another $988.87 for a headstone. She divided the remainder of the proceeds between the children of Ms. Childs and her granddaughter Tameka.

### 4. The Conservator's Fees

On July 23, 2008, Jeanan Stuart filed a notice of suggestion of death in the trial court, and a motion for entry of an order awarding her the fees and costs she incurred in her capacity as Conservator for Goldie Childs. An affidavit attached to the motion listed her hours and rates (70.35 hours at $200 per hour) and postage and copying expenses of $74.58. The total amount requested was $14,144.58. The court ordered that Ms. Stuart be paid the funds remaining in Ms. Childs' Conservatorship account, which amounted to $836.69, and it scheduled a hearing on her remaining fees.

The hearing was conducted on September 25, 2008. In the order resulting from that hearing, the trial court declared that the fees and expenses submitted by Ms. Stuart were reasonable and necessary, and that the $836.69 which Ms. Stuart had already been paid reduced the obligation of the estate to $13,307.89. The court also found that the estate of

Goldie Childs was insolvent at the time of her death, so it declared the unpaid part of the Conservator's fees to be uncollectible, but it rendered two judgments totaling $4,330 against Hazel and Oreva Childs.

One judgment was in the amount of $1,830, and was assessed against Oreva Childs alone. The court declared that this was the amount of fees and expenses "directly attributable to the actions of Oreva Childs in her refusal to return Mrs. Childs to the care of Bordeaux Long Term Care." The court also awarded Ms. Stuart $2,500 "against the original petitioners, Hazel Childs and Oreva Childs, jointly and severally, as costs in lieu of a proper surety bond." This appeal followed.

## II. ANALYSIS

### 1. The Judgment Against Oreva Childs

On appeal, Oreva Childs urges us to reverse the $1,830 judgment against her. She does not deny that her failure to return her mother to Bordeaux Long Term Care by the time set out in the trial court's order forced the Conservator to expend a great deal of time and effort in order to preserve her mother's right to continue her care under Medicaid. She contends, however, that she did not intend to cause such a result. She argues, rather, that she thought the order was mistaken or was part of some devious scheme, because it contained a date for her mother's return that was different from the date the judge announced from the bench, and because the signature at the bottom of the order was that of a different judge from the one who heard the case.

Her lack of bad intent, however, does not excuse her disobedience of the order. Parties over whom a court has jurisdiction are obligated to obey the orders of that court, even if they do not agree with those orders or do not believe that those orders are valid. *State v. Jones*, 726 S.W.2d 515, 517 (Tenn. 1987); *Johnson v. Johnson,* 499 S.W.2d 268, 271-72 (Tenn. Ct. App. 1973); *State v. Sammons*, 656 S.W.2d 862, 869 (Tenn. Crim. App. 1982).

Even a good faith belief that a trial court's order is erroneous is not a defense to a charge of criminal contempt. *Frye v. Frye,* 80 S.W.3d 15, 18-19 (Tenn. Ct. App. 2002). Thus, Oreva Childs' failure to obey the order without further action by the Conservator and the courts could factually support a finding of contempt. Tenn. Code Ann. § 29-9-102(3). However, no petition for contempt was filed herein, the procedures mandated by Tenn. R. Crim. P. 42 were not followed, and the amount of the judgment did not comply with Tenn. Code Ann. § 29-9-103.

The trial court did not indicate that the judgment against Oreva Childs was a sanction for contempt, and as discussed above, the record would not support such a finding. We can find no other authority for the judgment. Accordingly, we must vacate the trial court's judgment against Oreva Childs individually.

## 2. The Judgment Against Hazel and Oreva Childs, Jointly and Severally

After Hazel and Oreva filed their petition to be appointed as co-conservators in place of Ms. Stuart, the trial court declared that it would excuse Hazel and Oreva Childs from posting a bond in light of the meager economic means of the ward. However, it cautioned them that they would have to "bear all costs, including the necessary fees and expenses of the Conservator, relating to this petition, in the event that the co-petitioners pursue this petition and fail."

Ms. Childs passed away before Hazel and Oreva's petition was heard, and the court followed through on its warning by awarding Ms. Stuart $2,500 against the two women "jointly and severally, **as costs in lieu of a proper surety bond**." (emphasis added). However, we find no statutory requirement that petitioners must file the type of bond at issue.

Tennessee Code Annotated § 34-1-105(a) requires that a party **named as a fiduciary** post a bond "in an amount equal to the sum of the fair market value of all personal property [of the ward] and the amount of the anticipated income from all property, including the real property for one (1) year."[5] The purpose of the bond is to protect the assets of the ward in the event that the conservator steals or misapplies the ward's funds in violation of his or her fiduciary duty. *See*, generally, *Guardian and Ward*, 14 TENN.JUR. § 31.

Since Hazel and Oreva were never appointed as fiduciaries, the obligation to post a bond under Tenn. Code Ann. § 34-1-105(a) never arose as to them. It follows that there can be no foundation for any sanction imposed upon them for failure to meet an obligation that never arose. Thus, the trial court's reference to a proper surety bond was misplaced.

The law does, however, allow certain costs to be charged against a party whose petition to be named as a fiduciary is denied. Tenn. Code Ann. § 34-1-114 reads in relevant part,

---

[5]An exception to the requirement of a bond is found in Tenn. Code Ann. § 34-1-105(b) (2), which allows the trial court, in its discretion to waive the bond in circumstances when the total value of the ward's property does not exceed $10,000. The trial court made such a waiver, but it was without effect since Oreva and Hazel Childs were not appointed as conservators.

If a fiduciary is appointed, the costs for the proceedings, which are the court costs, the guardian ad litem fee, the required medical examination costs and the attorney fees for the petitioner, shall be charged against the property of the respondent . . . . If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner. The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court.

The statute clearly contemplates that a party whose petition to be named as Conservator is denied must bear some of the costs incurred as a result of that petition, including the court costs and the petitioner's own attorney fees. However, the statute does not include in its definition of chargeable costs the attorney fees incurred by the party opposing the petition, or any costs incurred by a party acting in the role of a Conservator.[6]

To the extent that the trial court's judgment against Hazel and Oreva Childs requires them to pay costs which are not within the purview of Tenn. Code Ann. § 34-1-114, it lacks a legal basis. It is unclear which, if any, of the costs that the statute requires the unsuccessful petitioner to bear were incurred in this case. We believe the trial court should be given the opportunity to modify its assessment of costs to comply with the provisions of the statute, and we remand this case for that purpose.

### III.

The judgment of the trial court is vacated. This case is remanded to the Circuit Court of Davidson County for any further proceedings consistent with this opinion. Tax the costs on appeal to the Appellee, Jeanan Mills Stuart, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[6]This court previously explored the question of the costs that can be taxed to an unsuccessful petitioner in a Conservatorship action, and we concluded in reliance upon an earlier version of Tenn. Code Ann. § 34-1-114 (which at that time was codified at Tenn. Code Ann. § 34-12-117) that although it was a close question, such costs do not include the attorney fees of the adversary counsel. *In re Webb,* 675 S.W.2d 176, 177 (Tenn. Ct. App. 1984). See, also, *Parker v. Parker*, No. E2004-00429-COA-R3-CV, 2005 WL 1277839 (Tenn. Ct. App. May 31, 2005) (no Tenn. R. App. P. 11 application filed) a case in which we reached the same conclusion on the basis of the current version of the statute.