**STATE of Tennessee, Appellee,**

v.

**Jesse JONES.**

**In re Larry S. BANKS, Attorney, Appellant.**

Supreme Court of Tennessee, at Knoxville.

March 16, 1987.

Lyle Reid, Reid & Banks, P.A., Edward L. Hardister, Reid & Banks, P.A., Brownsville, for appellant.

Hal D. Hardin, General Counsel, Nashville, for Tennessee Bar Ass'n as amicus.

W.J. Michael Cody, Atty. Gen. & Reporter Ann Lacy Johns, Asst. Atty. Gen., Nashville, for appellee.

Lance B. Bracy, Chief Disciplinary Counsel, Nashville, for Board of Professional Responsibility.

## OPINION

FONES, Justice.

The issue in this case is whether an attorney may refuse to accept a court ordered appointment as counsel for an indigent criminal on the ground that such representation would violate an ethics opinion issued by the Board of Professional Responsibility.[1] The ethics opinion declared unequivocally that "county attorneys cannot represent criminal defendants prosecuted by the county officers." The county attorney was Larry Banks' law partner, and the ethics opinion expressly declared that partners and associates of the county attorney were disqualified.

The transcript of the entire proceeding in the trial court consists of a three page colloquy between the trial judge and Banks.[2] Defendant Jones was indicted on 3 December 1984 for the offense of disorderly conduct and the colloquy took place on 12 December 1984. It is clear that at some date after 3 December and prior to the hearing on 12 December the trial judge had informed Banks that he would be appointed to represent defendant Jones. Banks' opening remarks reflect that he had been appointed, had looked over the file and had discussed it with the Attorney General. In open court Banks informed the trial judge that a deputy sheriff was listed on the indictment as a witness, that he was not sure whether the deputy would be a material witness or a technical witness, but that his understanding of the ethics opinion issued by the Board of Pro-

---

1. Formal ethics opinion 83–F–41, the full text of which is found in Appendix A to this opinion.

2. The transcript in its entirety is reproduced as Appendix B to this opinion.

fessional Responsibility was that he was precluded from representing Jones because his law partner was the county attorney. He therefore informed the court that he would have to decline the appointment. The trial court asked him if he had determined whether the deputy sheriff was anything more than a technical witness and informed Banks that the court understood that the only thing the deputy did was serve a warrant. Banks responded that that might be correct but that he understood the ethics opinion required that he decline "if there is even the appearance of a conflict." Banks gave an affirmative answer to the trial judge's question of whether he could give his best in representing defendant Jones but declined to obey the trial judge's direct order to represent defendant Jones.

The trial judge found as a fact that the conflict of interest upon which the ethics opinion was premised was not "sufficiently significant to prevent the appointment of Mr. Banks ... nor to adversely affect Mr. Banks' ability to represent the defendant zealously, competently and to the best of his ability." He found Banks in contempt, sentenced him to serve five days in the county jail, assessed a ten dollar fine and suspended the jail sentence upon payment of the fine and costs.

The Court of Criminal Appeals affirmed, one judge dissenting. Each member of the panel wrote an opinion. The lead opinion held that (1) "[t]he ethics opinion of the Board of Professional Responsibility, while persuasive, and binding on the Board of Professional Responsibility, did not have the force of law and was not binding on the courts"; (2) that there was nothing in the record to contradict the trial court's finding that Banks could ethically represent defendant Jones; and (3) that, to avoid contempt for refusal to obey an order of appointment by the court perceived to be erroneous, it was necessary to accept the appointment and seek dissolution of the order in the appellate courts.

The concurring opinion agreed with the lead opinion in every respect except one. The author of that opinion believed it un-

necessary to examine the merits of the ethics opinion because of the rule of law that the trial court's order must be obeyed to avoid contempt, even though erroneous and reversible on appeal, provided the court has jurisdiction and the order is not otherwise void.

The dissenting judge was of the opinion that this case was similar to and controlled by *State v. Maddux*, 571 S.W.2d 819 (Tenn. 1978). He also relied upon an unpublished order of this Court and an unpublished opinion of the intermediate court. His conclusion was that an attorney cannot be adjudged in contempt where he respectfully and in good faith relied upon an ethical ground for rejecting an appointment, even though the attorney be mistaken in his interpretation of the ethical considerations involved. His reliance upon *Maddux* for that conclusion was misplaced.

■ Trial judges are commanded by statute to appoint counsel for indigent defendants in criminal cases, including cases in which defendants are charged with misdemeanors. *See* T.C.A. § 40–14–102 *et seq.*

*Vanvabry v. Staton*, 88 Tenn. 334, 12 S.W. 786 (1890), is the landmark case in this jurisdiction for the principle that, even though the trial judge's order is erroneous and is reversed on appeal, an adjudication of contempt for failure to obey that order will be sustained. Staton, the Sheriff of Montgomery County, and his prisoner, Vanvabry, were present in the criminal court of that county at the hearing on Vanvabry's petition for the writ of habeas corpus. At the conclusion of the hearing the trial judge granted the writ and ordered the prisoner released. The District Attorney told the sheriff to hold the prisoner. The sheriff obeyed the District Attorney and returned Vanvabry to jail. For this he was adjudged in contempt, fined fifty dollars and sentenced to ten days in jail.

We quote relevant portions of the opinion written for the Court by Mr. Justice Lurton, who later served on the United States Supreme Court, as follows:

The order of his Honor, the Criminal Judge, releasing the prisoner, was erro-

neous, as we have already decided; but it was not void, being made in a case within his jurisdiction. Until superseded or reversed or vacated by appeal, it was a valid order, which the Sheriff and all other persons were obliged to respect and obey.

\*　　\*　　\*　　\*　　\*　　\*

The willful refusal of an officer of a Court to obey any lawful order, rule, or command of the Court is by the statutes made a contempt of Court. Code, § 4881. That the Sheriff intended no personal disrespect to the Court is altogether probable. He was guided by the opinion of the District Attorney, who doubtless was of opinion that the prayer for an appeal operated to vacate and annul the order discharging the prisoner. In this he was clearly in error. The order of discharge continued in force until superseded or reversed, and it was the clear duty of the Sheriff to obey and respect it while it continued in force and operation. To have obeyed it would probably have resulted in the escape of his prisoner. But for that no responsibility would have rested upon him. This would have been of insignificant importance compared to the just respect and obedience that every Court is entitled to demand and receive.

The Court having had jurisdiction, and the contempt being one committed in the presence of the Court, the judgment not being void, is not therefore reversible, and must be affirmed.

88 Tenn. at 351–352; 12 S.W. at 790–791.

*Vanvabry* has not been overruled or modified in the intervening years and we have no inclination to do so.

It is urged that *State v. Maddux supra*, controls the disposition of this case. The facts leading to the contempt citation imposed upon Byrd, the Bradley County lawyer cited for contempt in *Maddux*, were significantly different from those in the instant case. Byrd was appointed to represent a defendant in a child abuse case. He moved the court to be relieved principally upon the basis that he was prejudiced against child abuse and was convinced of defendant's guilt. The court denied the motion. Byrd moved the court to reconsider, and it was upon the hearing of that motion two weeks after the first motion that he was summarily adjudged to be in contempt. At that hearing the trial judge questioned Byrd about out-of-court statements that he had allegedly made to the affect that the court's appointment of him was politically motivated and that Byrd, a State Senator, had allegedly threatened to change the judicial district so that Bradley County would not be in the trial judge's district. The trial court's decree recited that Byrd had refused the appointment, that he had made public statements that the court was motivated by politics in appointing him and that as a State Senator he would rid Bradley County of the judge. However, upon examination of the record, this Court held that there was no material evidence to support the finding of the trial judge that Byrd had refused to accept the appointment. 571 S.W.2d at 821. We further held that refusal to accept the appointment was the only alleged act committed in the presence of the court and subject to summary punishment as direct contempt. The other acts upon which the trial judge relied, the public statements, were committed out of the presence of the court; and for those acts Byrd had not been accorded the due process mandated by law. In the course of pointing out that up to the time that Byrd was cited for contempt in open court, his acts would not support a finding of refusal to accept the appointment, this Court noted that, at worst, the record reflected that Byrd was trying to convince the trial judge that it was not in the best interest of the defendant, Maddux, that he represent her. The Court added, in that context, that Byrd's efforts were "presented forthrightly and respectfully, and had not yet become an unreasoning and contumacious refusal to abide by the rulings of the court." 571 S.W.2d at 821.

In contrast to *Maddux*, the trial judge's finding of fact in the instant case that Banks' willfully refused to accept the appointment was concurred in by the Court of Criminal Appeals. That concurrent finding

is binding upon this Court if there is any material evidence to support it. We will address the material evidence question later in this opinion. The insistence that a lawyer's refusal of an appointment must be disrespectful, unreasoning, or contumacious to justify a contempt citation is not well taken. The effort to attribute such a holding to the opinion in *Maddux* is misplaced. Apparently, the significance of this Court's factual finding in *Maddux* that there was no evidence in the record to support the trial judge's factual finding that Byrd had refused to obey the court's order is overlooked or ignored. Also overlooked is the fact that disrespectful, unreasoning or contumacious conduct in the presence of the court, standing alone and unconnected with any refusal to obey an order of court, is punishable as contempt of court. *See* T.C.A. § 29-9-102(1) and (2).

The contention is made that this Court approved, ratified or otherwise validated Ethics Opinion 83-F-41 in an unpublished order, filed in Knoxville on 22 May 1984, styled *In Re: Petition of John Paul Sexton for Modification of Ethics Opinion 83-F-41.*[3]

That matter was before the Court on a Rule 10 application. The facts were that a county attorney, J. Scott McCluen, had represented a defendant in a first degree murder case for an extended period prior to the issuance of Ethics Opinion 83-F-41 and had expended considerable time in the investigation and preparation of the case. McCluen reluctantly moved to be relieved because of the ethics opinion, and defendant Sexton intervened, requesting that McCluen be permitted to continue to represent him and be relieved of any responsibility for violating the ethics opinion. Under those circumstances, this Court decreed that the ethics opinion would not be given retrospective application but insisted that the actual and potential conflict of interest between McCluen's responsibilities as county attorney and his defense of Sexton be thoroughly explored and understood by Sexton before continuing the representation. The Rule 10 application before us in

that matter did not seek an adjudication of the validity or invalidity of the ethics opinion, only a modification that would relieve McCluen from compliance with it in the special circumstances presented.

Thus it follows that the concurring opinion of the Court of Criminal Appeals correctly held that whether the ethics opinion was a correct interpretation of the Code of Professional Responsibility or an incorrect one, or whether it had the force of law or was for guidance only, was immaterial on the issue of affirming or reversing the adjudication of contempt in this case.

Nevertheless, it is necessary that this Court pass upon the validity of ethics opinion 83-F-41 and clarify the status of ethics opinions issued by the rotating ethics committee composed of members of the Board of Professional Responsibility to prevent any further prejudice to the judicial process.

■ The lead opinion of the Court of Criminal Appeals correctly held that the ethics opinions of the Board of Professional Responsibility do not have the force of law. They are exactly as described in Supreme Court Rule 9, Section 26.5, "a body of principles and objectives upon which members of the bar can rely for guidance in many specific situations." We provided that the ethics opinions are binding on the Board of Professional Responsibility so that a lawyer relying upon an ethics opinion would not be held in violation of the Code of Professional Responsibility if this Court later determined that an ethics opinions was in error. We did not decree that the ethics opinions were binding upon the courts of this State because we cannot delegate adjudicative functions nor could we provide pre-issue review of the Board's ethics opinions. We reluctantly authorized the issuance of the ethics opinions in response to persistent requests from a substantial segment of the bar. Our reluctance was, in part, attributable to the recognition that it was inevitable that ethics opinions would be issued that the Court would not agree with. It is generally

---

**3.** See Appendix C.

known that this Court does not agree with all of the decisions of the trial courts and the intermediate courts. Thus there was no reason to expect that we would agree with all pronouncements of the Board of Professional Responsibility acting through its Ethics Committee.

Ethics Opinion 83–F–41 is premised upon the assumption that the county attorney in every county of this State has an identical lawyer-client relationship with the sheriff and his deputies or that the mere title of county attorney creates the appearance of a conflict of interest that makes it impermissible under any circumstances for the county attorney to represent a criminal defendant. We do not agree with either hypothesis.

The Legislature has not seen fit to create the office of county attorney as a general law applicable to all counties. Any county having a population of less than 400,000 that adopts the county manager form of government is required to have a county attorney, but there is no such requirement of other counties in the statutory law of Tennessee. *See* Title 5, Chapter 15, T.C.A. The duties of county attorneys described in the statute applicable to counties who adopt the manager form of government might or might not include representing the sheriff and his deputies. T.C.A. § 5–15–305. Apparently some counties do not have a county attorney. T.C.A. § 5–6–112 prescribes the powers and duties of county executives and provides that, "[i]f there be no county attorney," the county executive may employ an attorney to advise him and the legislative body of the county. Additional duties are listed which apparently would not include representing the sheriff or his deputies.

All agree that Ethics Opinion 83–F–41 clearly and unambiguously bans all county attorneys, their partners and associates in the State of Tennessee from representing a criminal defendant, if the defendant is being prosecuted by county officers. We find that to be an overbroad interpretation of the Code of Professional Responsibility. Conflicts of interest, both actual and perceived, cannot be dealt with by such sweeping blanket pronouncements. There may well be counties in this State where, upon examination by the trial judge of the lawyer-client relationship between the county attorney and the sheriff or upon examination of the perception of the community of that relationship, disqualification of the county attorney would be necessary. But, unless and until such an adjudication is made upon an adequate factual record, each appointment should be examined and a determination made concerning whether any actual or perceived conflict of interest exists that would prejudice the defense of the case under consideration.

■ The other factual determination to be made before application of the ban is whether the criminal defendant is being prosecuted by county officers. What constitutes "being prosecuted by county officers" must be determined by the materiality of the testimony of the sheriff or his deputies in making out the State's proof on the elements of the offense charged. Of course, it is axiomatic that the rights of the criminal defendant demand that there be no actual or perceived conflict of interest that would have any effect whatsoever upon the defense of the charges pending.

A lawyer aggrieved by the necessity of accepting an appointment to represent an indigent criminal defendant may accept the appointment and, at the same time that he or she diligently pursues the defense of the client, may seek a Rule 10 review of the propriety of the trial judge's decision in making the appointment. The basis for the Rule 10 application is that the lawyer, denied the right of review of whether it is appropriate for him to represent the defendant until after the trial and in the normal appellate procedure, loses a right he can never regain. *See State v. Willoughby*, 594 S.W.2d 388 (Tenn.1980). On the other hand, if the lawyer refuses the appointment and is adjudged in contempt, that judgment is final and appellate review is limited to a Rule 3 appeal, as in the instant case.

■ In either event, the lawyer who questions the propriety of the appointment has the burden of showing that a conflict

of interest exists. Of course, for appellate review of that issue an adequate record must be made in the trial court. It is incumbent upon the trial judge to give lawyers a reasonable opportunity to make a record on that issue. The issuance of a show cause order with an appropriate interval before the hearing would provide the opportunity to make such a record.

 Returning to the question of whether material evidence exists to support Banks' willful refusal of appointment, the record in this case does not contain direct evidence on the issue of whether defendant Jones would be prosecuted by county officers or the nature of the lawyer-client relationship between the county attorney and the sheriff of Haywood County. However, the burden of showing a disqualifying conflict of interest was upon Banks, and he failed to carry that burden. The record supports the inferences that the deputy sheriff listed on the indictment was not a material witness and that the trial judge did not consider that the lawyer-client relationship between the county attorney and the sheriff of Haywood County posed a conflict of interest applicable in all cases.

Because this is a case of first impression and because Banks was obviously acting in sincerity and good faith, and was at all times respectful in his conduct, it is with considerable reluctance that we affirm the concurrent finding that he willfully refused to obey the court's order. Finally, we are persuaded to do so because we interpret his position in the trial court to be that the appearance of impropriety existed, without any proof, and was disqualifying, compelling him to refuse the appointment.

In that posture, we are compelled to hold that the refusal to obey a lawful court order, although accompanied by lofty motivation and respectful and impeccable conduct, as was unquestionably true with Mr. Banks, may properly be adjudged contempt of court.

The judgment of contempt is affirmed. The suspension of the five day sentence is affirmed and the ten dollar fine is waived upon payment of the costs in this cause.

BROCK, C.J., and COOPER, HARBISON, DROWOTA, JJ., concur.

## APPENDIX A

### BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

#### FORMAL ETHICS OPINION 83–F–41

Inquiry is made concerning the propriety of representing criminal defendants prosecuted by the County Sheriff and deputies when the attorney's associate is the County Attorney.

Tennessee Formal Ethics Opinion 81–F–4 adopted the "New Jersey Rule" and quoted the New Jersey Supreme Court as follows:

... the Supreme Court wishes to publicize its view of the responsibility of a member of the Bar when he is attorney for a municipality or other public agency and also represents private clients whose interests come before or are affected by it. In such circumstances the Supreme Court considers that the attorney has the affirmative ethical responsibility immediately and fully to disclose his conflict of interest, to withdraw completely from representing both the municipality or agency and the private client *with respect to such matter*, and to recommend to the municipality or agency that it retain independent counsel. Where the public interest is involved, disclosure alone is not sufficient since the attorney may not represent conflicting interests even with the consent of all concerned. ... It is fundamental that no attorney who holds a public office should suffer anyone to attempt to gain an advantage by virtue of his official status.—*In Re: A & B.*, 44 N.J. 331, 209 Atl. (2d) 101.

Tennessee Formal Ethics Opinion 81–F–18 held that in the event representing a criminal defendant may alienate or jeopardize the corporate representation of the Law Enforcement Officers Association then such representation would be prohibited.

The opinion quotes The Kentucky Supreme Court as follows:

> "It is fundamental that energetic representation of criminal defendants often entails vigorous cross-examination of police officers with an eye to discrediting their testimony. Presented with the dilemma of alienating a group of police officers on the one hand and providing a criminal defendant with the most energetic possible defense on the other, the attorney faces a conflict which seriously endangers his ability to zealously represent his client as is required by Canon 7 of the Code of Professional Responsibility."
>
> *In re Advisory Opinion of Kentucky Bar Association,* 613 S.W. (2d) 416.

Tennessee Formal Ethics Opinion 81–F–23 held that it was improper for a City Attorney to defend a person being prosecuted in Criminal Court by the City Police Department. The opinion further quoted the Kentucky Supreme Court as follows:

> By its very nature criminal defense is an area of law that is subjected to intense public scrutiny. The public demand for professional independence is great. Canon 9 of the Code states as follows: 'A lawyer should avoid even the appearance of professional impropriety.'—The point is not whether impropriety exists but that any appearance of impropriety is to be avoided.... *In re Advisory Opinion of Kentucky Bar Association,* supra.

It is clear that the public cannot waive the appearance of impropriety inherent in the County Attorney representing criminal defendants prosecuted by the County law enforcement officers. Thus the County Attorney cannot represent criminal defendants prosecuted by the County officers. Therefore, pursuant to the vicarious disqualification provision of Disciplinary Rule 5–105(D) of the Code of Professional Responsibility, the partner or associate of the County Attorney is also prohibited from such representation.

This 14th day of April, 1983.

ETHICS COMMITTEE:
F. Evans Harvill
Oscar B. Hofstetter, Jr.

William R. Willis

APPROVED AND ADOPTED BY THE BOARD

APPENDIX B

IN THE CIRCUIT COURT OF HAYWOOD COUNTY AT BROWNSVILLE, TENNESSEE

State of Tennessee

vs:

Jesse Jones

CASE No. 9003

This case came on to be heard and was heard on the 12th day of December, 1984, before the Honorable Dick Jerman, Jr., Judge, and the following proceedings were had, to-wit:

THE COURT: State vs. Jesse Jones, disorderly conduct.

MR. BANKS: Yes, sir.

THE COURT: All right, I appointed you to represent him?

MR. BANKS: Yes, sir. You appointed me to represent Mr. Jones and in looking at the file on this matter and in discussing it with the Attorney General, Mr. Jones was charged for an offense in Haywood County and listed on the Indictment is a witness, Mr. Raymond Russell, who is a Deputy Sheriff of Haywood County, Tennessee. My partner, Mr. Lyle Reed, is the County Attorney and I'm not sure at this point in time whether Mr. Russell will be a material witness or technical witness, but based on what I understand to be the Ethic Committee Rulings of the Board of Professional Responsibility, since I'm a partner with Mr. Reid and he represents the county, then I would be precluded from representing Mr. Jones and I would have to respectfully decline representing him in all deference to the Court.

THE COURT: You are at this point refusing to obey a lawful order of this Court. Is that correct?

MR. BANKS: I'm afraid I would have to, Your Honor.

THE COURT: Let me ask you this. Have you looked into it enough to know whether or not you've got a—this is anything more than a technical violation—a technical conflict with regard to Mr. Russell? It's my understanding, the only thing that Mr. Russell did was serve a warrant in this case.

MR. BANKS: May it please the Court, I think that may be correct; however, once we get into the case it could develop into something more, and as I understand the rulings, if there is even the appearance of a conflict we would have to decline according to these rulings.

THE COURT: As this point, is there any question as to whether or not you can't represent this man and give your best in the case?

MR. BANKS: I think I can give my best to the man in the case, but as I understand the rulings, I'm precluded from doing that, based on these rulings, and I'm a servant of this Court or officer of this Court and I'm in somewhat of a conflict, and the only thing I know to do is to respectfully decline.

THE COURT: I'm ordering you to represent this man and try this case if it needs to be tried. Do you understand that?

MR. BANKS: I understand your order, yes, sir.

THE COURT: Are you telling me you're not going to do that?

MR. BANKS: I cannot do it, yes, sir.

THE COURT: Are you telling me that you're not going to?

MR. BANKS: Yes, sir.

THE COURT: I find you in willful contempt of this Court and sentence you to serve five days in the Haywood County Workhouse and fine you $10.00 and costs and I'll suspend the jail time conditioned on you paying the fine and costs in this matter.

APPENDIX C

IN THE SUPREME COURT OF TENNESSEE AT KNOXVILLE

IN RE: PETITION OF JOHN PAUL SEXTON FOR MODIFICATION OF ETHICS OPINION 83–F–41

Filed May 22, 1984

ORDER

PER CURIAM.

We have heretofore ordered that defendant's application to this Court dated April 6, 1984, be treated as a Rule 10 application and as such it is granted.

It appearing to the Court that defendant employed J. Scott McCluen to represent him in this case wherein he is charged with murder in the first degree, and that said attorney expended considerable time in the preparation of the case, all prior to the issuance of Ethics Opinion Number 83–F–41 that prompted the motions for the withdrawal of J. Scott McCluen as attorney for defendant to avoid being in violation of said Ethics Opinion and the Order granting said motions; and it further appearing that defendant asserts in his petition to this Court that he still desires to be represented by J. Scott McCluen,

It is ORDERED that if after being fully informed by the trial judge and J. Scott McCluen, at a hearing in open court, of the actual and potential conflict of interest between McCluen's activities as County Attorney and his role as lawyer for defendant in this murder case, defendant requests that McCluen be allowed to resume representation of him, Ethics Opinion Number 83–F–41 will not be given retrospective application in this case and J. Scott McCluen will not be held in violation thereof if he is allowed to resume representation of defendant John Paul Sexton.