IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 2, 2020 Session

## THE TOTAL GARAGE STORE, LLC v. NICHOLAS C. MOODY

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-CD-18-9      Kathryn Wall Olita, Judge[1]**

_____

### No. M2019-01342-COA-R3-CV

_____

This appeal concerns a noncompetition agreement.  The Total Garage Store, LLC ("TGS") sued former employee Nicholas C. Moody ("Moody") in the Chancery Court for Montgomery County ("the Trial Court").  TGS alleged that Moody violated his noncompetition agreement ("the Agreement").  At the end of a hearing on TGS's motion for a temporary injunction held 35 days after suit was filed, the Trial Court invoked Tenn. R. Civ. P. 65.04(7) to declare that the hearing was on the merits of the case, not just the injunction.  The Trial Court found the Agreement enforceable and entered an injunction order.  Later, TGS filed a motion for contempt against Moody alleging that he violated the order.  After a hearing, the Trial Court found Moody guilty of six counts of criminal contempt.  The Trial Court also awarded damages to TGS.  Moody appeals.  Because the record does not reflect that Moody received adequate notice that the injunction hearing also would be on the merits, we vacate the Trial Court's judgment as it pertains to Moody's alleged violation of the Agreement.  However, this does not and did not entitle Moody to ignore the temporary injunction, and we affirm the Trial Court in its finding Moody guilty of criminal contempt.  We therefore affirm, in part, and vacate, in part, the Trial Court's judgment, and remand for further proceedings consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in Part, and Vacated, in Part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Mark R. Olson, Clarksville, Tennessee, for the appellant, Nicholas C. Moody.

David L. Johnson, Tara L. Blake, and Katelyn E. Marshall, Nashville, Tennessee, for the appellee, The Total Garage Store, LLC.

_____

[1] Sitting by designation.

# OPINION

## Background

In February 2015, Moody was hired by TGS, a company that installs and repairs garage doors. TGS has four locations in Tennessee: Knoxville, Nashville, Clarksville, and Jackson. Moody worked at the Clarksville location. On March 2, 2018, following a dispute over a pay discrepancy, Moody left TGS. Moody quickly went into the garage door business himself. On March 23, 2018, TGS filed a verified petition as well as a motion for temporary injunction against Moody in the Trial Court. TGS alleged that Moody was in violation of the Employee Non-Competition, Confidentiality, and Non-Disclosure Agreement—or, the Agreement—which he purportedly signed on April 8, 2015. Among other things, the Agreement restricted Moody under certain conditions from competing with TGS in the garage door business within 75 miles of any TGS office for 24 months after his exit from the company. The pertinent provision of the Agreement reads as follows:

> [I]f Employee voluntarily terminates his/her employment with Company or his/her employment with Company is terminated for cause, for a period of twenty-four (24) months after the date Employee's employment is terminated, Employee will not, directly or indirectly: (i) solicit or initiate contact, for the purpose of providing competitive products or services, to persons, companies, firms, or corporations who are, at the time during the last eighteen (18) months of Employee's employment, clients and/or customers of Company; (ii) solicit any of Company's employees for any competitive service or business; (iii) work for a competitor or perform competitive services for a competitor; or (iv) plan, organize or engage as principal, employee, or otherwise in any business within Seventy-Five (75) miles of any office of the Company in existence at the time of termination, in competition with the business conducted by Company.

On April 27, 2018, some 35 days after TGS filed suit, a hearing was conducted before the Trial Court. Among the witnesses to testify was William Earnest ("Earnest"), President and Owner of TGS. Earnest stated that Moody's signing the Agreement was a precondition to his being hired. According to Earnest, the purpose of the Agreement was to protect TGS's trade secrets and other confidential information. Earnest stated "[i]t's designed so someone can't take our price list and go to a competitor with that." Earnest described Moody as having been "our lead residential service technician." Earnest testified that Moody interacted with customers, knew the company's "pricing points," and for three years had been "the face" of the company locally. Earnest testified to the many months spent training Moody, who had no prior experience in the garage door business. At the time of his departure, Moody was earning $56,000 per year at TGS. Earnest asked the

-2-

Trial Court for a temporary injunction "[t]o protect the investment we made in our business and to protect our other employees."

Moody testified. Upon leaving TGS, Moody opened up Tuckessee Garage Doors, his own residential garage door business. Moody denied ever signing the Agreement in the first place. Moody testified that he remembered signing a certain one-page document, but what TGS presented in court was not it. Further, Moody testified that he believed he had been hired by TGS to do commercial as opposed to residential work, and was restricted only from performing commercial work in competition with TGS. Moody acknowledged that he sometimes performed residential work while at TGS. Moody denied contacting any of TGS's clients.

The Trial Court ultimately found in favor of TGS. In so doing, the Trial Court found the Agreement enforceable and that Moody had, in fact, signed it. As the hearing neared its end, the Trial Court invoked Tenn. R. Civ. P. 65.04(7) to declare that the hearing was both on TGS's motion for a temporary injunction *and* on the merits of the case. The following exchange ensued:

> MR. JOHNSON [counsel for TGS]: … We have indicated that we're -- that we're only asking the Court to enforce this agreement for a year and a half, but at this point, this is just a temporary injunction, so the Court need not really get into the issue at this juncture about how -- how far --
> THE COURT: The Court can consolidate it as a hearing on the merits, which I'm looking up my citation here --
> MR. JOHNSON: Okay.
> THE COURT: -- which is typically what I do.
> MR. JOHNSON: Okay. Well, you know, for now, a preliminary injunction is appropriate, but I -- but I -- I want to mention one thing. We did not hear any proof at all, no argument or evidence presented either in the filings or evidence on the stand, of Mr. Moody trying to indicate that there was any hardship by this noncompete agreement being imposed. There was nothing about any -- about how he can't find another job. We all know what the economy is right now, and so -- that they have no basis to argue that imposition of the noncompete agreement puts any burden on Mr. Moody as a consequence of that, that they could offer any proof whatsoever. And for all of these reasons, Your Honor, we respectfully ask that you enter a temporary injunction.

***

THE COURT: All right. Rule 65.04(7) allows me to consolidate a hearing on the merits. I think this will be the first one I've ever done, and there's been a substantial number of where I'm not going to do that. I realize we have damage proof perhaps in the future. We have some other possible discovery issues that are coming up based upon the testimony here. But I will tell you that if you'll look at 65.04(7) where it talks about the -- at a future hearing, facts do not need to be brought up again that were brought up today, I will be a real stickler on that. So it needs to be the new stuff.

In May 2018, the Trial Court (Chancellor Laurence M. McMillan, Jr., at this stage) entered an order modifying the non-compete radius from 75 to 50 miles from TGS's Clarksville facility, but otherwise enjoining Moody from violating the Agreement according to its terms. The Trial Court stated, as relevant:

> Moody was employed by TGS as a service technician from February 26, 2015, until March 2018. On April 8, 201[5], he signed an Employee Non-Competition, Confidentiality, and Non-Disclosure Agreement ("the Agreement"). Moody performed both residential and commercial work on behalf of TGS. After his departure from TGS, Moody admittedly has engaged in the garage door business in the Clarksville area.
>
> Notwithstanding Moody's testimony, the Court finds that Moody signed the Agreement and that it is enforceable. Based on Tennessee case law, the Court rejects Moody's argument that the Agreement is unenforceable due to a failure of consideration, as Mr. Moody continued to be employed by TGS for many months after he signed the Agreement. The Court also finds that Moody voluntarily signed the Agreement such that the noncompete provision applies.
>
> Although the Court finds that the 24-month term of the Agreement is reasonable, the Court exercises its power to modify the geographic range of the noncompete provision such that it is limited to a 50-mile radius from TGS's Clarksville facility only.
>
> Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that Moody is ENJOINED from violating the terms of the Agreement, although Section 3(a) of the Agreement is narrowed to a radius of 50 miles from TGS's Clarksville office. This injunction shall be in effect until March 2, 2019, upon TGS's posting of a bond in the amount of $10,000.00.
>
> The Court further ORDERS that, pursuant to Tenn. R. Civ. P. 65.04(7), any evidence presented during this evidentiary hearing shall not be repeated at any subsequent trial.

Additional procedural matters unfolded in the case. In June 2018, Moody filed his answer. In August 2018, TGS filed a motion for contempt alleging that Moody had since violated the Trial Court's May 2018 injunction order by performing garage door work within the proscribed radius. In February 2019, Chancellor McMillan recused himself after Moody retained new counsel. The case was reassigned to Judge Kathryn W. Olita. In March 2019, Moody filed a motion seeking to amend his answer to assert additional affirmative defenses. Also in March 2019, the Trial Court entered an amended injunction order, which was substantially similar to the order entered originally. In May 2019, the Trial Court entered an order denying Moody's motion to amend his answer, stating that "Defendant seeks to pursue issues that were adjudicated during the Court's April 27, 2018 evidentiary hearing on Plaintiff's motion for an injunction." The Trial Court stated further that "[t]he Court's May 21, 2018 Order reiterates that it was invoking Tenn. R. Civ. P. 65.04(7) and that 'any evidence presented during this evidentiary hearing shall not be repeated at any subsequent trial.'" The Trial Court, having found that Moody failed to timely object to or otherwise seek relief from consolidation, concluded that the only remaining issues were those of damages and contempt.

In June 2019, final proceedings were held. The criminal contempt proceeding was bifurcated from the hearing on breach of contract and civil contempt. Although TGS alleged over 100 violations of the injunction order, it settled on pursuing only seven charges of alleged criminal contempt by Moody. TGS put on witnesses to testify to the work Moody performed. To show that Moody performed these jobs within 50 miles of TGS's Clarksville facility, TGS relied on Google Maps to establish the necessary distances. Upon request by TGS and over Moody's objection, the Trial Court took judicial notice of the distances as established by Google Maps.

Later that June, the Trial Court entered two orders—one pertaining to damages and civil contempt, and one pertaining to criminal contempt. In the former order, the Trial Court again rejected Moody's effort to revisit the merits of the case, stating in part:

> At the outset, the Court considered Plaintiff's Motion for Judicial Notice. For the reasons announced by the Court in open court and that are set forth in the Court's audio recording of the proceedings (which is incorporated herein by reference), the Court granted Plaintiff's Motion for Judicial Notice for both proceedings as it relates to the use of Google Maps.
>
> The Court also considered Defendant's objection to the ruling set forth in Chancellor Laurence M. McMillan, Jr.'s May 21, 2018 Order (as amended March 22, 2019) invoking Tenn. R. Civ. P. 65.04(7) and finding that evidence presented during the April 27, 2018 hearing would not be repeated. The Court made the specific findings of fact as it relates to this issue:

• The injunction hearing in this case that was consolidated with a trial on the merits as to the validity and enforceability of the parties' contractual agreement did not merely consist of arguments submitted by counsel for both sides. The record reflects that exhibits were admitted into evidence and that witnesses testified during the hearing.

• The parties and their counsel were specifically advised by the Chancellor that this was a consolidated hearing on the merits under Rule 65.04(7) and that no further proof would be presented on these issues.

• Rule 65.04(7) expressly affords the trial court the prerogative of advancing the trial on the merits of matters that pertain to applications for injunctive relief. The Rule states in pertinent part, "**Before or after the commencement** of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Tenn. R. Civ. P. 65.04(7) (emphasis added).

• It was, therefore, the Chancery Court's prerogative, as afforded by Tenn. R. Civ. P. 65.04(7), to advance the trial of the action on the merits and to consolidate the trial on the merits with the hearing of the application for injunctive relief.

• The Chancery Court's Order specifically stated that it was a consolidated hearing on the merits under Rule 65.04(7) and that no further proof would be presented on the issues.

• Defendant did not ever pursue a motion to revisit or set aside that Order.

• Defendant did not ever pursue an interlocutory appeal from that Order.

Therefore, as set forth in the audio recording of the June 10, 2019 proceedings, this Court rejected Defendant's objection to Chancellor Laurence M. McMillan Jr.'s invocation of Tenn. R. Civ. P. 65.04(7).

***

Nicolas Moody's employment with TGS ended in March of 2018. At the trial of this matter, Plaintiff entered into evidence, without objection, three (3) sets of Requests for Admissions that were unanswered by Mr. Moody during the course of this litigation. (Exhibits 22 — 24). The first set of requests establishes 58 addresses located within 50 miles of TGS's Clarksville location — 836 Cumberland Drive, Clarksville, Tennessee 37040. The requests further establish that Mr. Moody performed garage door services on behalf of himself or someone other than Plaintiff at each of the addresses following his departure from TGS. Defendant never responded to these requests and did not object to their entry into evidence at trial. Defendant did not present any evidence or testimony that he did <u>not</u> perform

garage door services at the locations set forth in the First Request for Admissions.

The Second Request for Admissions to Defendant establishes that Plaintiff incurred legal expenses as a consequence of enforcing its rights under the parties' Agreement. The requests further set forth that the amount, $31,949.75, is reasonable. Defendant never responded to these requests and did not object to their entry into evidence at trial. Defendant did not present any evidence or testimony that the Plaintiff did not incur the expenses set forth in the Second Request for Admissions.

Finally, in the Third Requests for Admissions to Defendant, Plaintiff establishes 47 additional addresses located within 50 miles of TGS's Clarksville location — 836 Cumberland Drive, Clarksville, Tennessee 37040. The requests further establish that Mr. Moody performed garage door services on behalf of himself or someone other than Plaintiff at each of the addresses following his departure from TGS. Defendant never responded to these requests and did not object to their entry into evidence at trial. Defendant did not present any evidence or testimony that he did not perform garage door services at the locations set forth in the Third Request for Admissions. The requests also established an additional $29,582.45 in expenses incurred through January 31, 2019 as actually incurred by Plaintiff and as reasonable.

***

Plaintiff seeks $65,000.00 in attorney's fees under Section 5 of the Agreement which provides, "[i]n any legal proceeding in which the Company obtains injunctive or other equitable relief or damages against Employee arising out of his/her violation of this Agreement, Company shall be entitled to recover from Employee its reasonable attorneys fees and costs to the extent approved by the court." (Ex. 33). The Court finds that Plaintiff is entitled to recover its attorney's fees in the amount of $65,000.00, which this Court expressly approves.

(Footnotes omitted). In addition to $65,000 in attorney's fees, the Trial Court awarded TGS $18,900 for the services Moody performed in violation of the Agreement as established by invoices. The Trial Court also held that Moody was in civil contempt, but declined to award TGS any additional damages on that basis. The Trial Court declined to extend the injunction, as well.

In its order regarding criminal contempt, the Trial Court found that Moody was guilty beyond a reasonable doubt of six counts of violating the Trial Court's May 2018

-7-

injunction order.  Moody was found not guilty on one charge.  Moody was sentenced to 60 days in jail (48 days suspended) and fined $300.  In July 2019, the Trial Court entered a money judgment for TGS against Moody in the amount of $83,900.  Moody timely appealed to this Court.

## Discussion

Although not stated exactly as such, Moody raises the following issues on appeal: 1) whether the Trial Court failed to provide Moody adequate notice under Tenn. R. Civ. P. 65.04(7) that the hearing held 35 days after TGS's petition was filed would be considered a final hearing on the merits; 2) whether Moody was prevented from showing that the Agreement was invalid; 3) whether the Trial Court erred in taking judicial notice of distances using Google Maps; and, 4) whether the Trial Court wrongly applied the preponderance of the evidence standard, rather than the beyond a reasonable doubt standard, in determining whether Moody was in criminal contempt.  TGS raises its own distinct issues on appeal, which we restate and consolidate as follows: 1) whether Moody's appeal should be dismissed because his brief does not appropriately cite to the record; 2) whether the Trial Court's invocation of Tenn. R. Civ. P. 65.04(7) could excuse Moody from complying with the Trial Court's injunction; and, 3) whether the Trial Court erred in entering the injunction when Moody never argued that TGS did not have a protectable business interest to support the parties' restrictive covenants agreement.  TGS also attempts to raise an issue of whether, pursuant to the Agreement, it should be awarded its attorney's fees incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness.  *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).  This appeal includes issues of criminal contempt.  In *Moody v. Hutchison*, we set out the burden of proof and standard of review regarding findings of criminal contempt as follows:

> The first issue we will address is Defendant's claim that Plaintiff failed to prove he was guilty of criminal contempt beyond a reasonable doubt.  As this Court recently observed in *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 Tenn. App. LEXIS 111 (Tenn. Ct. App. Feb. 23, 2004), *no appl. perm appeal filed*:
>
> > In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt.  *Black v.*

-8-

*Blount*, 938 S.W.2d 394 at 398 (Tenn. 1996) (citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn. 1964)). However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt. "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing Tenn. R. App. P. 13(e)). Furthermore, appellate courts review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993).

*Barber*, 2004 WL 343799, at *2, 2004 Tenn. App. LEXIS 111, at *8. *Accord*, *Freeman v. Freeman*, 147 S.W.3d 234, 242 (Tenn. Ct. App. 2003), *appl. perm. appeal denied March 22, 2004* ("Appellate Courts review a trial court's decision to impose contempt sanctions using the more relaxed 'abuse of discretion' standard of review.… The court of appeals has 'appellate jurisdiction over civil or criminal contempt arising out of a civil matter.' *See* T.C.A. § 16-4-108(b)…").

*Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004).

With these standards in mind, we first address whether Moody's appeal should be dismissed because his brief does not appropriately cite to the record. TGS asserts that "[a]lthough portions of Moody's Appellant Brief cite to the record, his brief is replete with assertions to which he does not do so as required." TGS cites to Tenn. R. App. P. 27(g) and Tenn. Ct. App. R. 6(b) in support of its argument. We agree with TGS that Moody's brief is not a model for record citation. It contains several unsupported assertions. However, Moody's brief is not so deficient throughout as to justify the heavy penalty of dismissal. Therefore, we decline TGS's request to dismiss Moody's appeal. However, we warn litigants that failure to consistently cite to the record as required risks waiver of one's issues on appeal.

We move now to Moody's issues, beginning with whether the Trial Court failed to provide Moody adequate notice under Tenn. R. Civ. P. 65.04(7) that the hearing held 35 days after TGS's petition was filed would be considered a final hearing on the merits. Moody points to, among other things, the affidavit in the record of Sheri S. Phillips

("Phillips"), the attorney who originally represented him in this matter and who was present at the April 27, 2018 hearing, wherein Phillips states that "[t]he Court, without Notice, pursuant to Rule 65.04 (7) advanced the hearing to a final hearing at the conclusion of the hearing." Moody argues that, owing to this lack of adequate notice, he was prevented from preparing effectively for trial on the merits.

The Tennessee Rules of Civil Procedure provide for the consolidation of trial on the merits along with a hearing on a preliminary injunction. Tenn. R. Civ. P. 65.04(7) states:

> CONSOLIDATION OF HEARING WITH TRIAL ON MERITS. Before or after the commencement of the hearing of an application for a preliminary injunction, the Court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision [65.04(7)] shall be so construed and applied as to save to the parties any rights they may have to trial by a jury.

Tenn. R. Civ. P. 65.04(7). Our Supreme Court analyzed the notice requirements of Rule 65.04(7) in *Clinton Books, Inc. v. City of Memphis*, 197 S.W.3d 749 (Tenn. 2006). The *Clinton Books* court reviewed law on the rule's federal equivalent, including the proposition that "before a trial court may issue an order of consolidation the court must provide the parties with 'clear and unambiguous notice ... either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'" *Id*. at 755 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). Our Supreme Court continued:

> Similar to those courts construing the federal rule, we conclude that a court must provide the parties with notice before issuing an order of consolidation in accordance with Rule 65.04(7) of the Tennessee Rules of Civil Procedure.
>
> The trial court in the present case did not order consolidation or provide notice to the parties of its intent to consolidate the hearings. Throughout the hearing, the parties emphasized that the hearing involved only the temporary injunction and that they wished to address the request for a declaratory judgment at a later date. The parties were not advised that the trial court had consolidated the hearings until the trial court issued its order finding that the statute met Tennessee constitutional standards. The trial court, therefore, failed to comply with Rule 65.04(7) of the Tennessee Rules

-10-

> of Civil Procedure….We remand the case to the trial court for a hearing on
> the merits with regard to the declaratory judgment action.

*Clinton Books*, 197 S.W.3d at 755-56. In 2013, this Court stated that "the success of an appeal of a court's decision to consolidate an injunction motion hearing with a trial on the merits rests upon the adequacy and timing of the notice provided to the parties." *Babb v. Cross*, No. E2012-01327-COA-R3-CV, 2013 WL 621974, at *4 (Tenn. Ct. App. Feb. 20, 2013), *no appl. perm. appeal filed*. According to Moody, his notice of consolidation was inadequate to non-existent.

In response, TGS denies that the Trial Court invoked Rule 65.04(7) only at the end of the April 27, 2018 hearing. TGS points to the declaration in the record of its attorney, David L. Johnson ("Johnson"), wherein Johnson stated that the announcement of consolidation came at the "outset" of the hearing:

> 1. I have served as legal counsel for the Plaintiff in this case since its outset.
> 2. At the outset of the April 27, 2018 injunction hearing (and before I requested that the Court utilize its audio recording system), Chancellor McMillan announced, *sua sponte*, that he intended to invoke the rule set forth Tenn. R. Civ. P. 65 that would make the matter a final hearing on the merits such that evidence presented during the hearing would not be repeated.
> 3. Immediately after Chancellor McMillan made this statement, I considered objecting on behalf of the Plaintiff but elected not to do so. At no time did Attorney Sheri Phillips object on behalf of Defendant. Nor did either party request that the hearing be delayed after Chancellor McMillan made this statement.

Thus, the record contains contradictory sworn accounts from the parties' counsel of when exactly the Trial Court first invoked Rule 65.04(7). In Johnson's account, Chancellor McMillan announced his intention at the outset. Phillips, Moody's previous lawyer, stated that the announcement came without notice at the end of the hearing. Unfortunately, these contrasting accounts do not assist us in determining when Moody received notice of consolidation. Rather than resolve the issue, these statements serve, in effect, to cancel one another. The transcript of the April 27, 2018 hearing shows no announcement of consolidation by the Trial Court at the hearing's outset.

TGS nevertheless argues that even if the Trial Court first invoked Rule 65.04(7) at the end of the hearing, the rule allows for notice to come after commencement of the hearing, and the Trial Court's invocation of the rule at hearing's end was sufficient. TGS argues further that Moody failed to timely object to the invocation of Rule 65.04(7), only

raising the issue months later after he retained new counsel. TGS points out that Moody was on notice of the Trial Court's intention to consolidate on April 27, 2018. TGS asserts that if Moody was opposed to consolidation, he should have sought to alter the Trial Court's decision on consolidation between the hearing and the May 21, 2018 entry of the injunction order.

TGS is correct in that, under Rule 65.04(7), a hearing may be consolidated "[b]efore or after the commencement of the hearing of an application for a preliminary injunction…." However, we note the proposition quoted in *Clinton Books* that notice, if not provided before the hearing commences, must come "at a time which will still afford the parties a full opportunity to present their respective cases." *Id*. at 755 (quoting *Univ. of Texas*, 451 U.S. 390, 395, 101 S.Ct. 1830). We do not believe that "after the commencement" extends to after the *conclusion* of a hearing, when the witnesses are done testifying and the parties are giving their closing arguments. Based on the record before us, the Trial Court declared sua sponte at hearing's end that it intended to consolidate the injunction hearing with a trial on the merits even though the evidentiary portion of the hearing was over. In our judgment, that notice was too late to afford Moody a full opportunity to make his case.

TGS contends that Moody should have objected at the time or moved to prevent consolidation before entry of the May 2018 injunction order, which was a non-final order subject to change. However, Moody did later attempt to amend his answer to include additional affirmative defenses only to be denied. Based on this record, Moody never had a meaningful opportunity to prepare for trial on the merits in this matter, including the opportunity to conduct discovery or assert applicable affirmative defenses.

Notice provided after the fact is not notice. It is a pronouncement. We conclude that the Trial Court's pronouncement at the end of the April 27, 2018 hearing that it was invoking Rule 65.04(7) did not qualify as adequate notice, if it can be deemed notice at all, of consolidation of trial on the merits. We vacate the Trial Court's judgment as it pertains to Moody's alleged violation of the Agreement and remand for further proceedings consistent with this Opinion.[2]

Moody's remaining two issues relate to his being found guilty of criminal contempt, beginning with whether the Trial Court erred in taking judicial notice of distances using Google Maps. "A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

---

[2] Our holding as to Moody's first issue pretermits discussion of his issue (2) and TGS's restated issue (3). As Moody lacked adequate notice of advancement and consolidation of trial, it is little wonder he complains of having not had the meaningful opportunity to prepare for and assert several defenses to the Agreement, such as lack of protectable interest. He may do this in the remanded proceedings below.

-12-

reasonably be questioned." Tenn. R. Evid. 201(b). It is within a trial court's discretion to take judicial notice of these facts. *Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005). Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id.*

Moody argues that Google Maps is subject to reasonable dispute and thus is not amenable to judicial notice. Moody likens Google Maps to expert testimony, except with no expert witness testifying. Moody states: "[T]he counsel for the Appellee[ ] did nothing at trial to establish the accuracy of Google Maps, the manner by which Google maps operated, or the basis to question, the manner by which Google Maps presents information. As [a] result, no ability to cross-examine the evidence presented was afforded the Appellant." Moody states further that the proceeding on criminal contempt was, at least in part, a "criminal case," with the implication that the Trial Court's alleged error was even more consequential.

Criminal contempt proceedings are not the same as criminal prosecutions. Rather, "[c]ontempt proceedings are sui generis—neither a civil action nor a criminal prosecution as ordinarily understood, nor a criminal prosecution within the Sixth Amendment of the United States Constitution." *Daly v. Daly*, No. W2017-02549-COA-R3-CV, 2020 WL 2731239, at *5 (Tenn. Ct. App. May 26, 2020), *rule 11 perm. app. denied Oct. 12, 2020* (quoting *Bowdon v. Bowdon*, 278 S.W.2d 670, 672 (Tenn. 1955)). They occupy a category of their own. However, even if we accept Moody's characterization, our research shows that courts in other jurisdictions have taken judicial notice of Google Maps in criminal cases, at least to establish distance between two points. While Tennessee law is scant on the question, we note an opinion by the Court of Appeals of Arkansas, Division III, in which that court wrote of the increasingly widespread practice of courts taking judicial notice of Google Maps to establish distance:

> [I]n our view the law is far from settled on whether and how Google—or any other internet-information source—can serve as a reservoir of adjudicative facts. *See* Kenneth S. Broun et al., 2 *McCormick on Evidence* § 330 (8th ed.) (Jan. 2020 update) ("[N]owhere can there be found a definition of what constitutes competent or authoritative sources for purposes of verifying judicially noticed facts.") (internal citations omitted). That said, there seems to be an emerging consensus that courts can use Google Maps to establish the distance between two geographic points. Here are some examples:

• *United States v. Burroughs*, 810 F.3d 833, 835 (D.C. Cir. 2016) (Google Maps was a source whose accuracy cannot reasonably be questioned for the purpose of identifying the area where the defendant was arrested);
• *McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n. 1 (9th Cir. 2012) (taking judicial notice of Google Maps to determine the distance from an Idaho location to a Utah location);
• *United States v. Perea-Rey*, 680 F.3d 1179, 1182 & n. 1 (9th Cir. 2012) (taking judicial notice for the purpose of determining the general location of a home and that the distance between it and the border was approximately one mile "as the crow flies," relying on a Google map and satellite image as a "source[ ] whose accuracy cannot reasonably be questioned");
• *United States v. Proch*, 637 F.3d 1262, 1266 n. 1 (11th Cir. 2011) (taking judicial notice of a map);
• *Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1219 n. 2 (10th Cir. 2007) (taking judicial notice of distance calculated using Google Maps).

*Reed v. State*, 2020 Ark. App. 49, at 6-7, 595 S.W.3d 391, 394-95. However, the Arkansas Court declined to hold that the trial court in that case abused its discretion in rejecting the defendant's proffered jury instruction based upon Google Maps evidence purporting to establish drive time rather than distance. *Id*. at 7-8, 595 S.W.3d at 395-96.

In one law review article, the authors went so far as to describe Google Maps as a website "so well known and enjoy[ing] such broad use that it may have achieved a status akin to Webster's Dictionary, permitting judicial notice of the accuracy of the site itself." Jeffrey Bellin & Andrew Guthrie Ferguson, *Trial By Google: Judicial Notice in the Information Age*, 108 Nw. U. L. Rev. 1137, 1176 (2014) (footnote omitted). The article, examining a hypothetical application of Google Maps evidence, continued:

The first factor for consideration is Google Maps' knowledge of the subject matter. Here, it is clear that the authors of the information on Google Maps have a comprehensive knowledge of local geography gleaned from official maps and first-hand observation. In addition, the employees at Google Maps are experts in applying a process of mapmaking designed with numerous safeguards, including cars that patrol for errors, or what Google calls "ground truthing" its maps. With respect to the second consideration, bias, there is no plausible argument that Google Maps is biased in any relevant way in its presentation of geography. As for incentive to be accurate, Google Maps has a powerful financial incentive to ensure the accuracy of its maps and possesses the resources necessary to act on that incentive. If Google Maps

is consistently inaccurate, people will not use the site, and Google will suffer reputational harm and financial loss.

Given this analysis, and in the absence of counterarguments that the online map is unreliable in this instance, the court should take judicial notice under Rule 201. Because this is a criminal case, the jury will be instructed that it "may or may not accept the noticed fact as conclusive," leaving wiggle room for the defense counsel to argue any flaws in the prosecution's low-effort, although highly convincing, method of proof. As noted supra, a judge in the common law era, familiar with the geography of the case, may very well have taken judicial notice of this same fact, but without Google Maps. Technology, and the tireless efforts of Google's employees, makes the process more sophisticated, more accurate, and more transparent[.]

*Id*. at 1176-77 (footnotes omitted).

We find these points persuasive. Moody fails to identify precisely how Google Maps is subject to reasonable dispute as to determining distance between two points. Google Maps reflects the efforts by Google employees to provide an accurate representation of geography. The company's business incentive to produce accurate maps is obvious. Furthermore, it is not as though Google Maps is a dubious new novelty. Google Maps has been relied upon by courts across jurisdictions for a number of years now, to say nothing of the general population. We see no reason why Tennessee should scorn the emerging consensus on the amenability of Google Maps to judicial notice, at least for the purpose of establishing distance between two points. We find no abuse of discretion in the Trial Court's decision to take judicial notice of distances using Google Maps.[3]

The final issue of Moody's that we address is whether the Trial Court wrongly applied the preponderance of the evidence standard rather than the beyond a reasonable doubt standard in determining whether Moody was to be held in criminal contempt. This is a puzzling issue since the Trial Court found explicitly that TGS had proven "beyond a reasonable doubt" that Moody was guilty of willfully violating the May 2018 injunction order six times. Moody points to nothing in the record showing that the Trial Court misapprehended the applicable burden of proof. Moody is entitled to no relief on this issue.

On a related matter, TGS raises the issue of whether the Trial Court's invocation of Tenn. R. Civ. P. 65.04(7) could excuse Moody from complying with the Trial Court's injunction order. In short, the answer is no. In *Nashville Corporation v. United*

---

[3] We emphasize that our ruling is restricted to taking judicial notice of Google Maps for determining distance between two points. We do not rule on any other potential evidentiary applications of Google Maps as they are not before us.

*Steelworkers of America, CIO*, 215 S.W.2d 818 (Tenn. 1948), our Supreme Court observed that the power to punish for contempt was "one of the highest prerogatives of a court of justice." *Id*. at 821. The Court went on to state that the party upon whom an order or command of the court operates "is not allowed to speculate upon the equity of the bill, or the legality or regularity of the order or decree, or of the writ issued thereon; but his simple duty is to obey; and when he disobeys it is a duty the court owes to itself and to the public to punish him at once." *Id*. (citations omitted). In *State v. Jones*, 726 S.W.2d 515 (Tenn. 1987), our Supreme Court reaffirmed the principle that with proper jurisdiction, "even though the trial judge's order is erroneous and is reversed on appeal, an adjudication of contempt for failure to obey that order will be sustained." *Id*. at 517.

We have determined that the Trial Court erred by invoking Tenn. R. Civ. P. 65.04(7) without providing adequate notice and vacated that aspect of its judgment accordingly. However, that does not excuse Moody's conduct. While Moody contends that the injunction order was "void" for lack of notice, he cites no authority in support of that contention. Moody only lacked notice that the Trial Court was going to invoke Rule 65.04(7) and consolidate the hearing. Moody did not lack notice of the hearing itself, nor does he attack the Trial Court's jurisdiction. The Trial Court's May 2018 injunction order was a valid, lawful order even though vacated on appeal. Until the Trial Court modified or set aside its order, or a higher court reversed or vacated the Trial Court's judgment, Moody was required to obey the Trial Court's order. He did not. Discerning no reversible error, we affirm the Trial Court in its finding Moody guilty of criminal contempt.

As a final matter, TGS attempts to raise an issue of whether, pursuant to the Agreement, it should be awarded its attorney's fees incurred on appeal. We say "attempt" because, while TGS devotes a section in the body of its brief to this argument, it does not identify it as a separate issue in its statement of the issues. "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). This would-be issue is waived. We also note our vacating the Trial Court's judgment on all matters, except the finding of criminal contempt, stemming from Moody's alleged violation of the Agreement.

In sum, we find and hold that the Trial Court erred by invoking Tenn. R. Civ. P. 65.04(7) without providing adequate notice. We vacate the Trial Court's judgment on all matters pertaining to Moody's alleged violation of the Agreement, including the money judgment for $83,900. We remand for a new trial on the merits. However, we affirm the Trial Court in its finding Moody guilty on six counts of criminal contempt. We thus affirm, in part, and vacate, in part, the Trial Court's judgment, and remand for additional proceedings consistent with this Opinion.

## **Conclusion**

The judgment of the Trial Court is affirmed, in part, and vacated, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed one-half against the Appellant, Nicholas C. Moody, and his surety, if any, and one-half against the Appellee, The Total Garage Door, LLC.

_____
D. MICHAEL SWINEY, CHIEF JUDGE