Cite as 2020 Ark. App. 49

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR–19–330

| | |
|---|---|
| LONNIE ALLEN REED<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** January 29, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-16-2841]<br><br><br>HONORABLE LEON N. JOHNSON, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

The issue here is whether we should judicially notice information obtained from the internet. The information Lonnie Reed asks us to accept as a so-called "adjudicative fact" is the time that Google Maps estimates it takes a car to travel from one place to another. Specifically, Reed asked the circuit court to instruct the jury on the typical route and estimated driving time it takes a person to travel by car from his alibi location (a tire shop) to the crime scene (a pharmacy). The obvious point of the request was to challenge the State's timeline of events. The court declined to do so. Reed appeals that decision.

I.

In 2016, the State of Arkansas charged Reed with several crimes related to an armed robbery of Express RX Pharmacy, which is located near the intersection of Mississippi Street and Cantrell Road in Little Rock. Around 6:52 p.m. on 6 July 2016, a white male who

was approximately 5'8" tall and wearing a black bandana across the bridge of his nose entered the pharmacy, pulled out a gun, and demanded all the Dilaudid and Oxycodone[1] the pharmacist had. The pharmacist put the bottles of Dilaudid and Oxycodone in a green plastic basket on the pharmacy counter. The gunman picked up the basket, walked toward the exit of the store, dumped the contents of the basket into the front of his shirt, and "threw the green basket in the floor right inside the building before he left." A partial latent fingerprint recovered from the green basket was recovered at the crime scene, and it matched a print of Lonnie Reed's right middle finger. Surveillance video captured the events.

During his jury trial, Reed presented an alibi defense: he was buying tires at Tire Market, on 16717 MacArthur Drive, in North Little Rock when the robbery occurred. Tire Market owner Jerry Ford testified that he sold Reed $376.90 in new tires on 6 July 2016 (the day of the robbery). According to Ford, his typical business hours are 8:00 a.m. to 5:00 p.m., but he had stayed open late, and Reed "was in the process of leaving" the tire store around 6:40 p.m. When defense counsel stated, "So he [Reed] was leaving your shop at 6:40[?]" Ford replied, "Yes." As evidence, Reed presented Ford's handwritten receipt containing Reed's name, address, dated "7-6-16," and time-stamped "6:40." On redirect and recross-examination, Ford said that it may have been "a little after" 6:40 p.m. when Reed left the tire shop.

Reed proffered two jury instructions to the Pulaski County Circuit Court that related to his alibi defense. The first proffer was a map and directions printed from Google Maps,

_____

[1]Dilaudid and Oxycodone are branded names of prescription narcotics.

which showed a route starting at the tire shop (16717 MacArthur Drive, North Little Rock) and ended at Express RX Pharmacy (7612 Cantrell Road, Little Rock). The document states: "Drive 12.5 miles, 14–18 min." A disclaimer appears on the document that was printed from Google Maps. It states:

> These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly.

The second proffered jury instruction stated:

A.R.E. Rule 201
Jural Notice

You must accept as conclusive the following facts:

The typical route by car from 16717 MacArthur Drive in North Little Rock to 7612 Cantrell Road in Little Rock is 12½ miles long *and takes 14–18 minutes*.

(Emphasis added). Over Reed's objection, the circuit court instructed the jury exactly as we have quoted above, with the sole exception that the court omitted the italicized words "*and takes 14–18 minutes*." In other words, the court told the jury to accept the distance in miles between the two points at issue (12.5 miles) but not how long it "usually" takes to drive between them (14–18 minutes).

II.

Reed contends that the circuit court should have taken judicial notice of the estimated driving time, instructed the jury on the fact, and the refusal to do so was an abuse of discretion and therefore reversible error.

3

Our standard of review regarding the use of jury instructions and evidentiary rulings is an abuse of discretion. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469 (evidentiary rulings); *Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849 (jury instructions).

A rule of evidence governs judicial notice of "adjudicative facts."[2] Arkansas Rule of Evidence 201 states:

> (a) *Scope of Rule*. This rule governs only judicial notice of adjudicative facts.
>
> (b) *Kinds of Facts*. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c) *When Discretionary*. A court may take judicial notice, whether requested or not.
>
> (d) *When Mandatory*. A court shall take judicial notice if requested by a party and supplied with the necessary information.
>
> (e) *Opportunity to Be Heard*. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
>
> (f) *Time of Taking Notice*. Judicial notice may be taken at any stage of the proceeding.
>
> (g) *Instructing Jury*. The court shall instruct the jury to accept as conclusive any fact judicially noticed.

---

[2]*Black's Law Dictionary* defines an "adjudicative fact" as "[a] controlling or operative fact, rather than a background fact; a fact that is particularly related to the parties to a proceeding and that helps the tribunal determine how the law applies to those parties. • For example, adjudicative facts include those that the jury weighs." *Black's Law Dictionary* 735 (11th ed. 2019).

4

A circuit court must instruct the jury on the applicable law. *Whitlock v. Smith*, 297 Ark. 399, 402, 762 S.W.2d 782, 783 (1989). To this end, our supreme court has adopted model jury instructions for circuit courts to use in civil and criminal cases. *In re Comm. on Jury Instructions*, April 19, 1965 (per curiam); *In re Standard Jury Instructions for Crim. Cases*, 264 Ark. App'x 967 (1979) (per curiam). These model instructions must be used unless the court finds they are not an accurate statement of the law. *Harmon v. State*, 2019 Ark. App. 572, 591 S.W.3d 347. We find no model jury instruction—civil or criminal—on judicially noticing adjudicative facts pursuant to Ark. R. Evid. 201. *See* Ark. Model Jury Instr.–Civil (West) (Nov. 2018 update); Ark. Model Jury Instr.–Crim. (Matthew Bender 2018).

Arkansas common law has been flexible and deferential on the issue of judicial notice. *See, e.g.*, *Hollis v. Erwin*, 237 Ark. 605, 374 S.W.2d 828 (1964) (court knew population and location of cities within Desha County); *Lewis v. Tate*, 210 Ark. 594, 197 S.W.2d 23 (1946) (taking judicial notice that Van Buren and Mulberry are both in Crawford County a few miles apart). Only a handful of Arkansas cases concern measurements and values. *E.g.*, *Sinkhorn v. Meredith*, 250 Ark. 711, 466 S.W.2d 927 (1971) (court may take judicial notice of diminished purchasing power of dollar); *Deaner v. Gwaltney*, 194 Ark. 332, 108 S.W.2d 600 (1937) (taking judicial notice that from 1928 to 1935 land values almost disappeared). As the parties have acknowledged in their briefs, no Arkansas case has asked and answered whether an average or estimated driving time, as shown by Google Maps, is a fact "not subject to reasonable dispute" and "from a source whose accuracy cannot be reasonably questioned." Ark. R. Evid. 201 (2019).

5

Federal Rule of Evidence 201 is almost identical to the Arkansas rule. One difference, however, arises in criminal cases. For example, Federal Rule of Evidence 201(f) states that in a civil case, a court must instruct the jury to accept the noticed fact as conclusive; but in a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive. Fed. R. Evid. 201(f). Arkansas Rule of Evidence 201(g) does not distinguish between civil and criminal cases. It simply states that "[t]he court shall instruct the jury to accept as conclusive any fact judicially noticed." Ark. R. Evid. 201(g).

The parties have cited some federal cases that address Google Maps and judicial notice. But in our view the law is far from settled on whether and how Google—or any other internet-information source—can serve as a reservoir of adjudicative facts. *See* Kenneth S. Broun et al., 2 *McCormick on Evidence* § 330 (8th ed.) (Jan. 2020 update) ("[N]owhere can there be found a definition of what constitutes competent or authoritative sources for purposes of verifying judicially noticed facts.") (internal citations omitted). That said, there seems to be an emerging consensus that courts can use Google Maps to establish the distance between two geographic points. Here are some examples:

- *United States v. Burroughs*, 810 F.3d 833, 835 (D.C. Cir. 2016) (Google Maps was a source whose accuracy cannot reasonably be questioned for the purpose of identifying the area where the defendant was arrested);

- *McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012) (taking judicial notice of Google Maps to determine the distance from an Idaho location to a Utah location);

- *United States v. Perea-Rey*, 680 F.3d 1179, 1182 & n.1 (9th Cir. 2012) (taking judicial notice for the purpose of determining the general location of a home and that the distance between it and the border was approximately one mile

6

"as the crow flies," relying on a Google map and satellite image as a "source[] whose accuracy cannot reasonably be questioned");

- *United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notice of a map);

- *Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1219 n.2 (10th Cir. 2007) (taking judicial notice of distance calculated using Google Maps).

But no consensus exists among federal or state courts on whether Google's (or any other internet source's) estimated driving times may be judicially noticed. At least one court has used Google Maps to establish distance and estimated driving time. *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 259 n.13 (E.D. N.Y. 2010) (noting estimated driving time from Auburn, New York, to Central Islip, New York, was approximately five and one–half hours, not three and one–half hours). The Eighth Circuit has, however, affirmed a district court's decision to reject a request to judicially notice that drive-time estimates from Google Maps are so accurate that they cannot reasonably be questioned. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015); *see also Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc.*, 101 F. Supp. 3d 1319, 1329 (N.D. Ga. 2015) (expressing skepticism whether driving times using Google Maps are facts that "can be accurately and readily determined" under Fed. R. Evid. 201(b)(2)).

Given the persuasive authority the parties have provided and the facts of this case, we hold that the circuit court did not abuse its discretion when it rejected Reed's proffered jury instruction. The Google Maps information that Reed proffered about a fourteen-to-eighteen-minute estimated driving time between his alibi location (tire store) and the crime scene (pharmacy) does not tend to show the basis or foundation for this information, how

7

this information was independently obtained, or whether there was any incentive to ensure the accuracy of Google's posted estimated driving times.

Reed has not shown that his proffered estimated driving time is a fact that can be accurately and readily determined using Google Maps. No testimony or documentary evidence established how Google Maps develops the estimated driving times, what level of accuracy the estimated time of travel has, whether the estimated Google drive times are verifiable (or falsifiable) using parallel sources (like Apple Maps or even just a witness driving the route and timing it). In fact, Reed's Google Maps proffered estimated driving-time reliability is undermined by its own disclaimer:

> These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly.

As the disclaimer either expressly states or intimates, driving times can differ depending on personal speeding habits, weather, traffic, collisions, construction, or other road conditions—including time of day (rush hour or not). Because the estimated driving time could be reasonably disputed, we agree that it was not a fact that could be judicially noticed in this criminal case. Consequently, the court did not abuse its discretion in refusing to instruct the jury that it must conclusively accept Reed's proffered estimated driving time.

The jury was tasked to weigh the evidence, including the testimony that Reed left the tire shop after 6:40 p.m., and the reasonable inference that he would not have had time to drive to the pharmacy at the intersection of Cantrell and Mississippi and rob it at 6:52 p.m. The jury heard Reed's alibi witness state that Reed was in the tire store until at least 6:40 p.m. The jury heard the pharmacist's testimony (and viewed surveillance video) that

8

the robbery occurred around 6:52 p.m. The jury was permitted to credit the witnesses' testimony and draw on its own knowledge of the area. *Worsham v. State*, 2017 Ark. App. 702, 537 S.W.3d 789 (the jury is entitled to draw on common sense and experience in reaching its verdict.). The jury was not required to believe Reed's alibi defense, and the court was not required to instruct the jury on estimated driving times as an adjudicative fact.

We therefore affirm Reed's convictions and the resulting fifty–five-year sentence.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.