Cite as 2021 Ark. App. 371

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR–21–55

| | |
|---|---|
| LONNIE ALLEN REED<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** October 6, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-16-2841]<br><br>HONORABLE LEON N. JOHNSON, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Lonnie Reed appeals the denial of his motion for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37 in which he argued that (1) his trial counsel was ineffective for failing to consult or retain a fingerprint forensic expert; (2) his appellate counsel was ineffective for failing to raise sufficiency of the evidence in his direct appeal; and (3) there was "absolutely no evidence" to support his convictions, which violates his right to due process under the constitution of the United States. We affirm.

In 2018, Reed was convicted of robbing a pharmacy and stealing prescription narcotics. At the time of Reed's trial, he knew that law enforcement investigators had lifted eight sets of unidentified latent fingerprints from the crime scene. The fingerprint sets were collected from a countertop near the pharmacy register, from the interior and exterior glass of the pharmacy's front doors, and from three green plastic medicine baskets in the pharmacy. Because it was unclear which of the three green baskets in the pharmacy was *the* green basket that the

pharmacist had handed the robber, all three green baskets were processed. Through expert testimony, the State established that the fingerprint card E1D3—which showed fingerprints that a detective had lifted from the bottom of one of the green baskets (State's exhibit No. 6)—had a partial fingerprint imprinted on it that matched Reed's right middle finger. However, the partial print of Reed's right middle finger on the green basket was also layered with the partial fingerprint of another individual. None of the other usable fingerprints that investigators recovered from the pharmacy's countertop, front door, or the other two green baskets in the pharmacy matched Reed's fingerprints. Additionally, no witness could positively identify whose fingerprints were on these items, including the fingerprint partially layered with Reed's, or when the fingerprints were imprinted.

At trial, Reed moved for a directed verdict and argued that the government had not sufficiently identified the perpetrator of the crimes. Specifically, Reed used the State's fingerprint evidence to cast doubt on the case, contending that no witness could say when the partial fingerprint identified as his own had been left on the basket or for how long it had been there; moreover, he argued that an undated partial fingerprint layered with an unknown person's partial fingerprint is insufficient evidence to support a conviction. Reed also presented an alibi defense to the jury and said that he was buying tires in North Little Rock while the true perpetrator robbed the pharmacy 12.5 miles away in Little Rock. The jury convicted Reed on two counts of aggravated robbery and one count of theft of property.

Reed appealed his convictions to this court. His sole point in the direct appeal was that the circuit court abused its discretion in refusing to instruct the jury that it had to conclusively accept Reed's estimated Google Maps driving time between Little Rock and North Little Rock. *Reed v. State*, 2020 Ark. App. 49, 595 S.W.3d 391. We rejected Reed's judicial-notice

2

argument and affirmed the judgment. *Id.* In March 2020, Reed filed a timely petition for postconviction relief, which the circuit court denied without a hearing on 13 November 2020. Reed has appealed the November 13 order.

Our standard of review in a Rule 37 proceeding is the following: on appeal from a circuit court's ruling on a petitioner's request for postconviction relief, we will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Felty v. State*, 2017 Ark. 1, 508 S.W.3d 26 (per curiam). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

We begin by addressing the State's claim that Reed should be granted no relief in this appeal because the forty-five-page verified petition that he filed in the circuit court was too long. Arkansas Rule of Criminal Procedure 37.1(b) (2020) provides:

> The petition shall state in concise, nonrepetitive, factually specific language, the grounds upon which it is based. The petition, whether handwritten or typed, shall be clearly legible, and *shall not exceed ten pages* of thirty lines per page and fifteen words per line, with left and right margins of at least one and one-half inches and upper and lower margins of at least two inches. The circuit court or appellate court may dismiss any petition that fails to comply with this subsection.

(Emphasis added.)

Our supreme court's precedent informs our reading of this rule. While Rule 37.1(b) states that the "circuit court or appellate court may dismiss any petition that fails to comply with this subsection," dismissal of a petition that is too long is not mandatory. The Arkansas Supreme Court has held that a petitioner's failure to comply with Rule 37.1(b) is not a jurisdictional defect and that the circuit court may rule on a nonconforming petition. *Smith v. State*, 2015 Ark. 23, at 2, 454 S.W.3d 219, 220–21 ("[W]hen a petitioner timely files his verified petition

3

that does not comply with Rule 37.1(b), the trial court has the discretion to act on the merits of the petition, dismiss it without prejudice to filing a petition that conforms to Rule 37.1(b), or dismiss the petition.").

In the circuit court, the State never moved to dismiss Reed's forty-five-page petition for any reason, and Reed never requested leave of the court to amend his petition. The circuit court had the option under Rule 37.1(b) to dismiss Reed's petition with or without prejudice, but it did not do so. While the court's November 13 order states that Reed's petition was "subject to dismissal," the court did not dismiss his petition. Instead, the circuit court noted the petition's length, then decided its merit on the basis of Reed's substantive arguments. Had the circuit court dismissed Reed's petition for its overlength, and had Reed appealed the dismissal, then we would review that decision for an abuse of discretion. *E.g.*, *Sanders v. State*, 352 Ark. 16, 98 S.W.3d 35 (2003). But because the circuit court has denied Reed postconviction relief on the merit of his petition, and Reed has timely appealed that decision, we review the merit of the circuit court's decision under a clearly erroneous standard of review. *Maiden v. State*, 2019 Ark. 198, 575 S.W.3d 120. We therefore do not agree with the State that the circuit court's denial of relief should be summarily affirmed because Reed's petition was too long.

Next, the substance of Reed's appellate arguments. Here, Reed has renewed two of the arguments[1] that he made to the circuit court in his petition for postconviction relief, which the

---

[1] On appeal, Reed has not renewed the first argument that he made in his Rule 37 petition, which was that his trial counsel was ineffective for failing to consult or retain a fingerprint forensic expert. This argument has been abandoned so we do not decide it. *See* *McClure v. State*, 2013 Ark. 306 (per curiam) (Issues raised below but not argued on appeal are abandoned.).

4

circuit court ruled on in its November 13 order. First, Reed says that he was denied due process because "no evidence" supports his conviction. Reed specifically argued to the circuit court in his Rule 37 motion that his appellate counsel's failure to raise sufficiency on appeal was a prejudicial error because

> [t]he evidence presented by the state supports nothing more than a mere possibility, that Reeds partial fingerprint was impressed upon the moveable basket during the commission of the crime, at best the appearance of Reeds partial fingerprint on the moveable basket proves nothing more than Reed had been at pharmacy on a prior date and time, or that Reeds partial print was impressed upon the basket before it was purchased by the pharmacy. Thus, a conscientious mind would have to have entertained a reasonable doubt in judging whether the crime was committed by Reed or by someone else.[2]

To support the argument that insufficient evidence exists to support his convictions, Reed quoted many state and federal cases including *Turner v. State*, 103 Ark. App. 248, 288 S.W.3d 669 (2008), *Standridge v. State*, 310 Ark. 408, 837 S.W.2d 447 (1992), and *United States v. Strayhorn*, 743 F.3d 917 (4th Cir. 2014).[3] In *Turner*, we reversed several convictions, including a conviction for aggravated robbery, when there was no corroborating evidence, and the State's case rested entirely on the strength of a single fingerprint on the exterior of a truck. We reasoned that there was no way to determine when the defendant touched the exterior of the truck. In *Standridge*, our supreme court held that a thumbprint on an easily movable cup that was some feet away from some marijuana plants was insufficient to prove that the defendant was manufacturing marijuana. Why? Because no evidence suggested *when* the defendant had touched the cup. In *Strayhorn*, the Fourth Circuit Court of Appeals reversed a criminal

---

[2]This argument is substantially the same argument that Reed's trial counsel made to the circuit court in his directed-verdict motions, which were denied.

[3]Reed provided these cases to his appellate lawyer, to the circuit court in his Rule 37 petition, and now to us in his pro se appellant's brief.

conviction and held that "a fingerprint on an easily movable object with no evidence of when it was imprinted is sufficient to support a conviction only when it is accompanied by additional incriminating evidence." 743 F.3d at 924.

Reed also argues here that his appellate counsel was ineffective because he failed to challenge the sufficiency of the State's evidence in the direct appeal. In his Rule 37 petition, Reed swore that he gave "explicit instructions to appellate counsel to raise the issue of insufficient evidence on direct appeal" and that he sent his lawyer, Clint Miller, a twenty-page "dossier" containing cases like *Turner*, which showed that a single fingerprint on a moveable object is insufficient to uphold a conviction in Arkansas. A copy of this "dossier" was included as an exhibit to Reed's Rule 37 petition. Reed also swore that he sent Mr. Miller a statement of his case explaining certain perceived inconsistencies in the evidence. For example, he said that the pharmacy's employees described the perpetrator as "a white male 30 years old, 5′ 8″ tall, 200 to 250lbs," but Reed himself is "44 years old, 5′ 9 1/2″ and 180 lbs." A letter in the record from Mr. Miller thanked Reed for the information, told him that he was not allowed to serve as co-counsel in the appeal, and that Miller would be making the final decision on what arguments to include in the brief. (It is undisputed that Miller omitted challenging the sufficiency of the evidence when he filed the brief in Reed's direct appeal.)

The Constitution of the United States prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979). We review postconviction claims of ineffective assistance of appellate counsel under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also State v. Rainer*, 2014 Ark. 306, 440 S.W.3d 315. Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was

6

objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding (in this case the appeal) would have been different. 466 U.S. at 687–89. And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotations and citations omitted).

Regarding whether an appellate attorney's performance was constitutionally sufficient, the Supreme Court of the United States has emphasized that, although appellate attorneys are not required to raise every arguable issue or every possible "nonfrivolous claim" (not even those specifically requested by the defendant), they are expected to explore and select the claims most likely to succeed on appeal. *Smith v. Robbins*, 528 U.S. 259 (2000). An appellate court must therefore consider the relative merit of the omitted issue, in relation to any appealed issues, in order to determine whether appellate counsel's performance was adequate, applying a strong presumption that the performance was adequate. *Id*. at 288.

In the context of ineffective-assistance-of-appellate-counsel claims, we must also examine whether the appellate attorney's failure to raise the omitted issue prejudiced the defendant. *Id*. A petitioner must show that there could have been a specific issue raised on appeal that would have resulted in the appellate court's declaring reversible error. *Rainer*, 2014 Ark. 306, 440 S.W.3d 315. According to the Arkansas Supreme Court, it is the petitioner's responsibility to establish that "the issue was raised at trial, that the trial court erred in its ruling on the issue, and that an argument concerning the issue could have been raised on appeal to merit appellate relief." *Id*. at 13, 440 S.W.3d at 323 (internal citations omitted).

We hold that Reed has failed to show how his appellate counsel's failure to raise a sufficiency claim has prejudiced him under *Strickland*. Because substantial proof of guilt exists to support Reed's convictions for aggravated robbery and theft, we cannot say with the requisite amount of certainty that appellate counsel's decision not to raise an insufficient-evidence argument on direct appeal prejudiced Reed. This was an admittedly circumstantial case. But circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused. *Holland v. State*, 2017 Ark. App. 49, 510 S.W.3d 311. Circumstantial evidence may not provide the sole basis for a criminal conviction if it can be reconciled with the theory that someone other than the defendant committed the crime. *Henson v. State*, 2014 Ark. App. 703, 450 S.W.3d 677. Two equally reasonable conclusions as to what occurred merely give rise to a suspicion of guilt, which is not enough to support a conviction. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000). Weighing the evidence, reconciling conflicts in testimony, and assessing credibility are all matters exclusively for the trier of fact. *Holland*, *supra*.

In every criminal case, the State is required to prove the identity of the person who committed the crime. *Stewart v. State*, 88 Ark. App. 110, 195 S.W.3d 385 (2004). To support a conviction, the State must present evidence at trial that the defendant was the perpetrator of the charged crime. This is generally provided by an in-court identification of the accused; however, it can also be inferred from other evidence as long as that evidence is substantial. *Id*. In summary, there must be enough circumstantial evidence to establish each element of the offense and be inconsistent with any reasonable hypothesis of innocence by a defendant. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007).

Kent Vincent, an independent pharmacist and a partial owner of Express Rx, testified that he was the pharmacist on duty the day of the robbery. During his testimony, Vincent explained that Express Rx kept green plastic baskets behind a secondary counter in the pharmacy and used them for internal organizational purposes. He said that the green plastic baskets were purchased at a retailer approximately two years before the robbery, but Vincent could not recall which retail store. According to Vincent, a nonemployee would not be able to touch the green baskets because the baskets were not located close enough to the front retail counter to allow it. Several feet of space exists between the front retail counter and the secondary pharmacy counter where the green baskets were kept. Vincent testified that the green plastic baskets were never accessible to customers and that a customer had never touched a green basket (to his knowledge). Additionally, the trial testimony established that prior to the robber's grabbing a green basket, only employees had access to or had touched the green baskets. The pharmacy, for example, did not hire a cleaning service, and Vincent said that he was the person who cleaned the pharmacy. Vincent also testified that Lonnie Reed was "unknown" to the pharmacy; the jury could have drawn a reasonable inference that Reed had never been to the pharmacy before the robbery.

Surveillance videos of the interior of the pharmacy were accepted as evidence during the trial. The video and testimonial evidence established that the perpetrator—a white male wearing a hat, a bandana, and no gloves—entered the pharmacy through the front door. Upon entering, the man lifted up his shirt and pulled out a gun from his waistband and pointed the gun directly at the pharmacist. Standing at the back counter, the pharmacist filled a green plastic basket with prescription drugs. The pharmacist then brought the plastic basket from behind the back secondary counter to the front primary retail counter and handed the green basket

9

with the drugs to the gunman. After demanding more drugs, the gunman quickly carried the basket full of prescription narcotics toward the front door before dumping the drugs from the green basket into the front of his tee shirt. Discarding the green basket in his right hand and throwing it to the floor, the gunman exited the pharmacy through its front door.

Pharmacist Vincent testified that after the gunman left, he immediately tried to secure the front door. The green basket that had been discarded by the robber was in the way of locking the metal gate protecting the front door, so he moved the basket. After locking the front door with an iron gate, Vincent placed the green basket handled by the robber on the pharmacy's back secondary counter close to the other baskets. Little Rock police employee Rebecca Johnson, who works in the crime-scene-research unit, testified that it is "very typical" for a person immediately after an upsetting incident to go back into "their normal mode and start cleaning and rearranging things." She said that because of Vincent's attempt to clean up after the robbery, there was confusion over which of the green baskets in the pharmacy was handled by the robber. That is why all three green baskets were tested. As stated earlier in the opinion, Reed's right middle fingerprint was found on the bottom of one of the green plastic baskets that was collected and analyzed from the crime scene.

According to Reed, the circumstantial evidence in this case was not inconsistent with his theory of innocence. He says that the evidence is consistent with the conclusion that his partial fingerprint was impressed upon the basket before it was purchased by the pharmacy or when he was at the pharmacy previously. We disagree. On this record, a jury could have reasonably concluded that Reed's fingerprint on the green basket could have been impressed only during the commission of the crimes.

Viewing the evidence in the light most favorable to the State, there is sufficient evidence from which the jury could infer Reed's guilt beyond a reasonable to doubt to the exclusion of all other inferences. The State established that all green baskets in the pharmacy were inaccessible to nonemployees. The green baskets were kept in a restricted area behind the retail counter, and no third parties such as cleaners or customers were allowed in the secondary restricted area. The pharmacy was robbed by a white male, and Reed is a white male who substantially matches in appearance the suspect in the video—or so a juror could have reasonably concluded. The existence of another fingerprint layered on Reed's fingerprint could be explained by Vincent's clean-up efforts after the robbery. The jury could also believe Vincent's account that he had never seen the gunman before. And from this testimony, the jury could have reasonably inferred that Reed was not a pharmacy customer and therefore reject the defense's theory that perhaps Reed had visited the pharmacy previously. Under these circumstances, the jury could also have reasonably rejected Reed's (wild) hypothesis that he could have touched the green basket at an unidentified retail store more than two years before the robbery. In sum, a rational juror could have inferred from the State's proof that Reed committed the crimes.

Because there is substantial evidence from which a jury could conclude that Reed was guilty, Reed has not shown that his appellate counsel's failure to challenge the sufficiency of the State's evidence against him was prejudicial. Reed has not shown a *reasonable probability* that raising a challenge to the sufficiency of the evidence would have resulted in a different outcome in his direct appeal. Consequently, Reed has not established that the circuit court clearly erred when it denied him postconviction relief.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*Lonnie Allen Reed*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.